# White *v*. The State.

*Indictment for Grand Larceny, and Burglary.*

72  195
100  142

72  195
133  149

1. *Averment of ownership of property.*—In an indictment for burglary, where the house broken into and entered belongs to several partners, joint owners, or tenants in common (Code, § 4800; Sess. Acts, 1878--9, p. 46), the ownership may be laid in any one or more of them.

2. *Misnomer; admission implied from silence.*—Issue being joined on the plea of misnomer in a criminal case, it is competent for the prosecution to prove, as an implied admission by the defendant, that he was arraigned and tried in the mayor's court by the same name alleged in the indictment, without interposing any objection on the ground of misnomer.

3. *Same; relevancy of evidence as to custom or usage.*—On the trial of such issue, the alleged misnomer being in the surname of the defendant, who was a young mulatto boy, and whose mother, testifying as a witness for him, was called by the surname of her former owner, and stated that his name was also the same, as alleged in his plea; evidence of the fact that, "after the war, negroes took their surnames from their former owners or masters, and negro children were called by the name of their mother's former owner or master," has no legitimate tendency to prove that the defendant thus acquired his surname, and is not relevant or admissible evidence for him.

4. *Sufficiency of evidence, and charge as to conflict.*—If the jury entertain a reasonable doubt as to the truth or falsity of any material fact constituting a part of the testimony in a criminal case, the defendant is entitled to the benefit of that doubt, however small may be its influence; but this principle does not extend to a conflict in the testimony of two witnesses as to a collateral and immaterial matter.

5. *As to presumption implied from failure to call witness.*—There is no rule of law which requires that, in cases of larceny or burglary, based on circumstantial evidence, the person who last had the rightful or innocent possession of the stolen property must be examined as a witness for the prosecution, or raises a presumption favorable to the defendant's innocence from the failure to examine such person as a witness.

6. *Possession of stolen goods by accused.*—Possession of stolen goods by the accused, even though unexplained and exclusive, does not authorize the inference of his complicity in the larceny or burglary charged, unless it is also recent, or soon after the commission of the offense; and while the word *recent*, in this connection, is not capable of any exact definition, but varies, within a certain range, with the conditions of each particular case, and though there may be cases in which the court may, as matter of law, pronounce the possession recent; yet the question is usually one of fact for the determination of the jury, and a charge which ignores it, or withdraws it from their consideration, is erroneous.    (Overruling *Maynard v. The State*, 46 Ala. 85.)

FROM the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The indictment in this case contained two counts; the first charging, that the defendant, " Dixie White, before the finding

[White v. The State.]

of this indictment, broke into and entered the dwelling-house of Ben. Matthews, with intent to steal;" and the second, that he "unlawfully and feloniously took and carried away a watch, of the value of over twenty-five dollars, the property of Ben. Matthews." The defendant pleaded in abatement on account of an alleged misnomer, averring that his true name was Dixie *Wyche*, and that he never had been known or called by the name of Dixie *White;* and issue was joined on this plea. "On the trial of the plea of misnomer," as the bill of exceptions states, "the defendant proved by Parthenia Wyche, that she was his mother, and he was named Dixie Wyche; that she was a slave before the war, and belonged to Dr. A. Wyche, and in this way her son obtained the name of Wyche. Ed. J. Mastin, Wm. Street, and other witnesses for the State, testified that they had known the defendant for several years, as Dixie White; and said Mastin stated, that he had known the defendant to be arraigned and tried in the mayor's court of the city of Huntsville, by the name of Dixie White. To this evidence of said Mastin the defendant objected, but the court overruled the objection, and the defendant duly excepted. On cross-examination, Thos. C. Barclay, a witness for the State, testified that he lived in Marshall and Madison counties, Alabama, for many years before the war, and in one of said counties ever since the war; and the defendant then offered to prove by said witness, that after the war negroes took their surnames from their former owners or masters, and that negro children were called by the name of their mother's former master or owner. The court excluded this evidence, on objection by the State, and the defendant duly excepted. The jury brought in a verdict for the State on the plea of misnomer, and the defendant then pleaded not guilty."

"On the trial, *Ben. Matthews*, a witness for the State, testified that, in April, 1881, he and William Halsey jointly rented and occupied a room over Schaudies' boot-store in Huntsville, from Isham J. Fennell; that he and Halsey each had a key to said room; that said room was broken into during said month, and a watch was taken from a trunk in the room, and that he recovered the watch shortly afterwards; and said witness produced and identified the watch, and described how the door was broken open. *Fred. Howe*, a witness for the State, testified that he was a jeweller in Huntsville; that in April, 1881, a tall, yellow man came into his store, accompanied by the defendant, and handed the said watch to witness, and asked if it was gold; saying that, if there was anything wrong about it,—that he was talking about buying it from the defendant. Thereupon, defendant said, 'You are a liar; you asked me to show you a jeweller's shop, and I came with you.' Witness identified the

watch as the one produced by said Matthews, and valued it at $32; did not know the tall, yellow man; sent for a policeman, and defendant was at once arrested at his store. *Henry Hamlin*, colored, a witness for the State, identified the watch as one which he saw the defendant trying to sell on the day of his arrest, at the United States court-house in Huntsville, and testified that the defendant left the watch with one William Miller, colored; that said Miller was going around trying to sell the watch, in the absence of the defendant; that the defendant claimed the watch, and was asking $5.00 for it before he left it with Miller, and was trying to sell it to a tall, yellow colored man, with round shoulders, who was a stranger. Said *Miller*, colored, a witness for the State, identified said watch as one that the defendant had at the United States court-house, but said that the defendant did not leave it with him, and that he did not go around trying to sell it; that he met the defendant at the depot, on the day before the watch was seen by him at the court-house, and defendant then had the watch. Mr. *Goodwin*, a witness for the State, testified that he was at the defendant's preliminary trial, on the day of his arrest, in April, 1881; that one of the witnesses for the prosecution was a tall, yellow man, with round shoulders, named Hashaw, who was a stranger in Huntsville, and was then attending the United States court as a witness. The defendant objected to all of this evidence about Hashaw, as irrelevant and illegal; and the objection being overruled by the court, the defendant duly excepted. *William Halsey*, mentioned by said Matthews, was sworn as a witness for the State, and was put under the rule, but was not examined. This was all the evidence."

"The court, in its general charge to the jury, said, that 'it was sufficient to allege the house entered to be the dwelling-house of Ben. Matthews, and that although the evidence might show it was also the dwelling-house of William Halsey, the jury could convict, because it was only necessary, in cases of larceny or burglary, to allege and prove one of two or more joint owners.' To this part of the charge the defendant duly excepted. The court charged the jury, also, 'that if it were proved that the defendant had possession of the watch, and they were satisfied by the evidence that it had been stolen, then such possession, if unexplained by the defendant, was sufficient to create the presumption of his guilt.' To this part of the charge, also, the defendant duly excepted."

The defendant asked several charges in writing, which the court refused, and which were as follows:

"1. If the jury find that the evidence of Hamlin and Miller is in conflict on material points, the jury is to determine which of them tells the truth, or whether either of them tells the truth;

and if they have a reasonable doubt as to whether or not they have spoken truly, the defendant is entitled to the benefit of such doubt.

"2. If Halsey had joint possession of the room with Matthews, and was present in court as a witness for the State, and the State failed to examine him as a witness to prove that the room was not entered with his permission, then the jury is authorized to presume that the entry was made with the permission of said Halsey, and the defendant should not be convicted of burglary.

"3. If the jury find that the room alleged to have been broken and entered was at the time jointly occupied and controlled by said Matthews and Halsey, then the defendant can not be convicted of burglary under the indictment.

"4. If the jury find that Halsey had joint possession of the room alleged to be entered, and of its contents; and that the watch was taken from a trunk in said room; and that Halsey was present in court as a witness for the State, and was not examined as a witness; then the defendant's possession of the watch, if he had it in his possession, does not create the presumption of his guilt.

"5. Before a defendant can be convicted of burglary or larceny on circumstantial evidence, the person who last had innocent possession of the property must be examined as a witness, or the failure to examine him must be accounted for."

Exceptions were duly reserved by the defendant to the refusal of each of these charges; and he now relies on these several rulings of the court, to which, as above stated, he reserved exceptions, as grounds of reversal. The jury, by their verdict, found the defendant guilty of grand larceny; and he was thereupon sentenced by the court to imprisonment at hard labor for the county, for one year.

WALKER & SHELBY, for appellants.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—Section 4800 of the Code of 1876, *as amended* by the act of December 4, 1878, provides, that "when *any property*, upon or in relation to which the offense was committed, belongs to *several* partners or owners, it is sufficient to allege the ownership to be in *any one or more* of such partners or owners."—Acts 1878–79, p. 46. The original statute had reference only to *personal* property, and not *real.*—*Harris v. The State*, 60 Ala. 50. The manifest purpose of the amendment is, to extend its operation so as to embrace property of all kinds, whether real, personal, or mixed. It clearly abrogates.

the common-law rule, which required an indictment for burglary to state with precision the name of *each* of several owners of a building, alleged to have been burglariously entered.—*Davis v. The State*, 54 Ala. 88. It is now sufficient to lay the ownership or property in any one or more of such joint tenants, partners, or tenants in common. The indictment conformed to this principle, and was sufficient.— *Williams v. The State*, 67 Ala. 183.

2. Under the issue of *misnomer*, interposed by the defendant, it was competent to prove that he had been arraigned and tried in the Mayor's Court of the city of Huntsville by the name of Dixie *White*. This, if true, was an admission by him of such name, in the absence of objection to it, and tended to prove that he was as well known by that name, as by the name of Dixie *Wyche*..

3. The court below very clearly did not err in excluding the evidence offered by defendant, to the effect that "negroes, after the war, took their surnames from their former owners or masters, and that negro children were called by the name of their mother's former master or owner." This testimony was too uncertain, indefinite, and remote, to come within that class of evidentiary facts regarded as relevant. It had no legitimate tendency to prove the same fact to be true in the particular case of the defendant, especially when as to him it was controverted as the principal issue in the case. It is entirely outside of the influence of the principle permitting evidence of custom or usage. 1 Greenl. Ev. §§ 292 *et seq.* ; 2 Whart. Ev. §§ 958 *et seq.*

4. The proposition can not be doubted, that, if the jury entertain a reasonable doubt as to the truth or falsity of any material fact, constituting a part of the testimony in a criminal case, the defendant is entitled to the benefit of such doubt, however small may be its influence. The first charge asked by the defendant did not, however, fall within the purview of this principle. It erroneously assumed, that the witnesses Hamlin and Miller conflicted in their testimony as to a *material fact*. They both stated, that the defendant had possession of the watch alleged to have been stolen ; and the only conflict was as to his having left it with the witness Miller, and as to the latter's exertions to sell it ; which was a collateral matter entirely immaterial, and in no wise affecting the defendant's guilt or innocence of the crime charged in the indictment. The charge in question is, also, objectionable for ambiguity, and, for this reason, was properly refused.

5. There is no rule of law which requires, in cases of burglary, or larceny, based on circumstantial evidence, that the person, who last had innocent possession of the stolen property, must be examined by the State, and that the failure to examine

[White v. The State.]

such witness creates any presumption favorable to the innocence of a defendant. Charges numbered five and six, as requested by the defendant, were erroneous in assuming the existence of such a principle, and were properly refused.

6. It is not *every* or *any* possession of stolen goods by a party, which will authorize the inference of his complicity in the crime of larceny or burglary; nor, in fact, every such *unexplained* possession, although it may be *exclusive,* as opposed to the idea of a joint possession with others. Another element is necessary in order to constitute a *guilty* possession. It must be *recent,* or soon after the commission of the offense to which it has reference.—*Henderson v. The State,* 70 Ala. 23; 1 Greenl. Ev. § 34; Whart. Cr. Ev. § 758; Clark's Cr. Dig. §§ 97, 145, 635; *Murray & Bell's case,* 48 Ala. 157, 675; *Crawford's case,* 44 Ala. 45.

What is meant by "recent," is incapable of exact or precise definition, and the term has been said to vary, "within a certain range, with the conditions of each particular case." Whart. Cr. Ev. § 759. There are cases, no doubt, so clear in nature, and undisputed in facts, as that the court could pronounce the possession recent, as matter of law; but the question is usually one of fact for the determination of the jury. Be this as it may, we are of opinion that the charge given by the court on this subject was erroneous, because it excluded from the consideration of the jury a necessary element of a guilty possession—namely, that it should be *recent;* and its vice consisted in assuming that any other kind of possession afforded a just inference of the defendant's complicity in the crime with which he was charged. It is upon the same principle that charges ignoring the question of venue, and withdrawing it from the consideration of the jury, have always been pronounced erroneous.—*Gooden v. The State,* 55 Ala. 178; *Bain v. The State,* 61 Ala. 75. The same is true of a charge ignoring or withdrawing the question of intent to defraud, in an indictment for forgery (*Gooden's case, supra*); or of any material fact which is a necessary constituent of the prisoner's guilt. *Corbett v. The State,* 31 Ala. 330; *McAdory's case,* 59 Ala. 92.

The ruling made in *Maynard's case,* 46 Ala. 85, is not in harmony with these views; and to this extent, the authority of that case must be overruled.

There is nothing in the other exceptions. The judgment is reversed, and the cause remanded for a new trial. In the meanwhile, the prisoner will be retained in custody, until discharged by due course of law.