237 So.2d 640

Ex parte STATE of Alabama ex rel. ATTORNEY GENERAL.

In re Horace E. DAVIS, alias

v.

STATE of Alabama.

3 Div. 448.

Supreme Court of Alabama.

June 11, 1970.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for petitioner.

Hill, Hill, Whiting & Harris, Montgomery, opposed.

MERRILL, Justice.

Horace E. Davis was convicted for possessing certain narcotics and was sentenced to two years in the penitentiary. The Court of Criminal Appeals reversed because the only evidence came as a result of a search and the appellate court held that the search warrant was not based upon an

adequate showing of probable cause for believing that the narcotics were on Davis' premises.

The Attorney General petitioned this court for writ of certiorari, basing the petition on the ground that the opinion was in conflict with a prior decision of this court, properly setting out excerpts from the opinion of the Court of Criminal Appeals and from the opinion of this court which appeared to be conflicting. We granted the writ, and the cause was argued May 12, 1970.

At the present time, and when we granted the writ, we do and did agree that the result reached by the Court of Criminal Appeals was correct under the recent decisions of the Supreme Court of the United States relating to search warrants, but we think the opinion put an unnecessary and heretofore unrequired additional burden on the affiant requesting the search warrant, which is contrary to our recent case of Clenney v. State, 281 Ala. 9, 198 So.2d 293.

The full affidavit made by a narcotic agent for the State of Alabama is set out in the opinion of the Criminal Court of Appeals, and we quote here only the first paragraph:

"Information from a person whose record of reliability for correctness has been good that at 331 Restaurant Possum Davis has had illicit narcotics, narcotic derivatives, marijuana, amphetamines and/or barbiturates including McNeils. That Davis stated he had a supply at his restaurant building, in his car and in a small out building. This information given me in several conversations over a period of about one month in person and over telephone."

The Attorney General, in setting out the conflicting opinion, stated in the State's petition for writ of certiorari:

" *. * * In its opinion, the Court of Criminal Appeals stated:

" ' * * * Wise or unwise, the founders have inserted in our organic law the requirement that no search warrant be issued except upon an oath denoting probable cause.

" 'The effect of this constitutional command is to require that the affiant (e. g. a police officer swearing out for a search warrant), who relies upon an informer, must do at least two things: (a) furnish the magistrate with information to support the credibility of the informer and (b) to furnish some observation of the officer himself of some fact or conduct perceived by him (or perhaps by another law enforcement officer) which admits of the same inference as does the statement of the informer.

\*      \*      \*      \*      \*      \*

" 'The occasions of prior information [as detailed in the instant affidavit] should have been stated in the informer's "batting average" and would have given the magistrate something to consider in determining the weight of the hearsay. * * *'

"In the case of Clenney v. State, 281 Ala. 9, 198 So.2d 293, this Honorable Court stated: " 'Another statement of the rule seems to be that the magistrate need not require that the informant or his affidavit be produced, and need not require that affiant have personal knowledge about the place to be searched, "so long as there was a substantial basis for crediting the hearsay." Jones v. United States, supra, 362 U.S. [257] at page 272, 80 S.Ct. [725] at page 736, [4 L. Ed.2d 697].

\*      \*      \*      \*      \*      \*

" 'There is one difference between *Draper* [Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327] and the instant case. In *Draper*, the informer had given information on prior occasions and the prior information had been found to be accurate and reliable. The opinion does not show how many times the *Draper* informer had been accurate

prior to the *Draper* arrest. Neither does the *Draper* opinion say how many prior times the informer must have been accurate in order to be classed as reliable. Must he be tested more than once before he can be relied on? If such a test is a constitutional requirement, then the caller in the case at bar cannot be considered reliable. We do not think, however, that such is the rule. * * *" "

■ Disposing of the informer's "batting average," first, we agree that *Clenney* says that no "batting average" is required to establish the reliability of the informer. If the affiant so desires, he may cite prior instances of proven reliability, but it is not a requirement.

■ *Clenney* says that the hearsay of the informer, which the affiant relies upon, must be supported by facts showing a substantial basis for crediting the hearsay. And *Clenney* adopts the methods required in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), to show such a substantial basis. These requirements are that the magistrate be informed of (a) some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and (b) some of the circumstances from which the officer concluded that the informant was "credible" or his information "reliable." The Court of Criminal Appeals did not reach the question of the informer's basis for his information but decided the case partially on the ground that the informer's reliability was not shown.

■ However, we think that the affidavit did adequately show the basis for the officer's conclusion that the informer was reliable. The United States Supreme Court has considered affidavits presenting information from informants. In *Aguilar*, the officers said, "Affiants have received reliable information from a credible person." In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969),

the affidavit said that the FBI "has been informed by a confidential reliable informant." In the instant case, the officer said, "Information from a person whose record of reliability for correctness has been good."

The showing here is more than the showings disapproved in *Aguilar* and *Spinelli*. We have been cited to no United States Supreme Court case condemning such a showing. The lower courts have been split on the question. The United States Second Circuit Court of Appeals has approved a statement very similar to the one in the instant case where the informant was simply characterized as "an informant of previous reliability." United States v. Freeman, 358 F.2d 459 (2 Cir. 1966); Contra, United States ex rel. Palladino v. Gable, 281 F.Supp. 69 (E.D.Pa. 1968).

We now turn to the other half of the *Aguilar* test for the sufficiency of an affidavit utilizing information received from an informer. The Court of Criminal Appeals stated it to be that the affiant must "furnish some observation of the officer himself of some fact or conduct perceived by him (or perhaps by another law enforcement officer) which admits of the same inference as does the statement of the informer."

■■ As we read *Aguilar* and *Spinelli*, they do not require anything more than a showing of circumstances necessary to enable the magistrate to determine the validity of the informant's conclusion that the narcotics are where he says they are. This may be by an independent corroborative observation of the officer himself or it may be from information received from the informant himself. See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. *Spinelli* would not have become controlling without Justice White's concurrence because a vote by him to affirm "would produce an equally divided court." In his concurring opinion, Justice White stated:

"I am inclined to agree with the majority that there are limited special circumstances in which an 'honest' informant's report, if sufficiently detailed, will in effect verify itself—that is, the magistrate when confronted with such detail could reasonably infer that the informant had gained his information in a reliable way. See *ante*, at 589. * * *"

Based upon his interpretation of the opinion in which he concurred, there are times when a valid search warrant can be issued without some observation of the officer himself or some other law enforcement officer "which admits of the same inference as does the statement of the informer."

■ We conclude that the affidavit failed to reveal sufficient circumstances to satisfy this part of the *Aguilar* test. It is true that the informer told the officer that Davis had stated he had a supply of narcotics at his restaurant, in his car and in a small out building. But the affidavit does not state how his informant learned of this statement, or whether it was made to him. Spinelli emphasized that it is important for the magistrate to have information before him on which he can determine that the informant's conclusions are reasonable "so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld." The court later said, in evaluating an informant's statement, "This meager report could easily have been obtained from an offhand remark heard at a neighborhood bar."

While the affidavit here does purport to contain more support for the informant's conclusion than was present in *Aguilar* and *Spinelli*, the affidavit is still deficient. For all the magistrate knew, this information was fifth hand. The informant's statement, as related by the officer, did not indicate that Davis had made this statement to the informer himself. Such a basis for the informer's conclusion would be much less persuasive than more direct support for the informer's conclusion, for example, a statement that he had seen the narcotics or had purchased narcotics from Davis at the restaurant. Thus, this one underlying circumstance, with its potentiality for being a "rumor circulating in the underworld," is not a sufficient showing of the circumstances from which the informant concluded that the narcotics were where he said they were.

■ Finally, we agree with the Court of Criminal Appeals that the affidavit is deficient because it fails to show that the information received from the informant was fresh as opposed to being remote. No date is stated in the affidavit other than the date it was signed before the judge of the county court.

We conclude by quoting from the next to last paragraph of the majority opinion in *Spinelli*:

"The affidavit, then, falls short of the standards set forth in *Aguilar, Draper*, and our other decisions that give content to the notion of probable cause. In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1964); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270–271, 80

S.Ct. 725, 735–736, 4 L.Ed.2d 697 (1960).
* * *"

The judgment of the Court of Criminal Appeals is affirmed.

Affirmed.

All the Justices concur.