290 So.2d 220

In re John J. **HORZEMPA, Jr.**

v.

**STATE of Alabama.**

Ex parte STATE of Alabama ex rel. **ATTORNEY GENERAL.**

SC 557.

Supreme Court of Alabama.

Jan. 24, 1974.

Rehearing Denied March 7, 1974.

Jacob A. Walker, Jr., Opelika, for respondent.

William J. Baxley, Atty. Gen., and Charles R. Hare, Jr., Sp. Asst. Atty. Gen., for the State, petitioner.

FAULKNER, Justice.

John J. Horzempa was convicted of illegal possession of marijuana and was sentenced to five years in the State penitentiary. The Court of Criminal Appeals, 52 Ala.App. 153, 290 So.2d 217 reversed because the evidence seized was held to be the result of the unconstitutional validity of a search warrant. Certiorari was granted because the case was one of first impression.

The affidavit presented to the magistrate as the basis of his issuance of a search warrant is as follows:

"Affiant has received information from two different reliable informants that they have been in above described residence on several occasions recently and there have been drugs that are above described in the residence of John Thomas Walding. Both informants have made numerous drug buys for affiant in the past two weeks and their reliability has been established. The last buy was made three days ago and was a good buy. Both informants state the above drugs of Marihuana and Mescaline are now in the house which is described above and occupied by John Thomas Walding, alias, . . . and John Doe, alias, whose name is unknown to the affiant."

Before a warrant for search can be issued, the judicial officer issuing the warrant must be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L. Ed.2d 306 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In *Whiteley* the sheriff's complaint alleged that " . . . defendants did then and there unlawfully break and enter a locked and sealed building . . ." This was stated by the court to be nothing more than a conclusion on the part of the sheriff and could not support the independent judgment of a disinterested magistrate.

In *Aguilar* the officers said that, "Affiants have received reliable information from a credible person." In *Spinelli* the affidavit contained the words that the FBI "has been informed by a confidential reliable informant." In State, ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640 (1970) the affidavit stated, " 'Information from a person whose record of reliability for correctness has been good that . . . Davis has had illicit narcotics . . . That Davis stated he had a supply at his restaurant building, in his car and in a small out building. This information given me in several conversations over a period of about one month in person and over telephone.' "

The question before this court now is whether the affidavit met the test laid down by the United States Supreme Court and this court. In State, ex rel. Attorney General, supra, Justice Merrill stated that,

"As we read Aguilar and Spinelli, they do not require anything more than a showing of circumstances necessary to enable the magistrate to determine the validity of the informant's conclusion that the narcotics are where he says they are. This may be by an independent corroborative observation of the officer himself or it may be from information received from the informant himself.

\* \* \* \* \* \*

"We conclude that the affidavit failed to reveal circumstances to satisfy this part of the Aguilar test. It is true that the informer told the officer that Davis had stated he had a supply of narcotics at his restaurant, in his car, and in a small out building. But the affidavit does not state how his informant learned of this statement, or whether it was made to him."

■ The affidavit in this case fails to state any facts corroborating the conclusion of the informants that the "above drugs of Marihuana and Mescaline are now in the house . . . occupied by John Thomas Walding." This is a conclusion on the part of the informers. The affidavit states that "The last buy was made three days ago and was a good buy" qualifying that the informants had made buys for the officer. However, the statement omits that the "buy" was made from the defendant. The affidavit states that they have been in the "above described residence on several occasions recently and there have been drugs that are above described in the residence of John Thomas Walding."

In White v. State, 72 Ala. 195 (1882) this court said, "What is meant by 'recent', is incapable of exact or precise definition, and the term has been said to vary, 'within a certain range, with the conditions of each particular case.' " In Reynolds v. State, 46 Ala.App. 77, 238 So.2d 557 (1970), it was said that a statement in an affidavit for a search warrant that an informant had "recently" seen or purchased drugs, when connected with other language that would lead to the conclusion that the unlawful condition continued to exist on those premises at the time of the application for the warrant, has been held sufficient. Citing cases. It was further said in *Reynolds* that, "The use of the word 'recently' in the affidavit under consideration, coupled with the statement that the drugs 'are contained' at the described location, was sufficient to show the event was not too remote."

In the affidavit before us it merely says two reliable informants have been in the house on several occasions "recently" and "there have been drugs" in the residence. It fails to show that the informants had *purchased* drugs "recently" in the house, or that they had actually *seen* drugs "recently" in the house. It fails to show how the informants came into possession of knowledge that "there have been drugs . . . in the residence."

The State's brief states as a proposition of law that,

"An affidavit supporting a search warrant which states in essence 'that the informant has *recently* seen drugs in the place to be searched' is sufficient."

This is not the situation in this case. The informants did not say they had "recently seen" drugs in the residence. This proposition of law does not fit the mold of this case.

The judgment of the Court of Criminal Appeals is affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and JONES, JJ., concur.

MERRILL, HARWOOD, MADDOX and McCALL, JJ., dissent.

MERRILL, Justice (dissenting).

The sole question presented on this review is the constitutional validity of the search warrant, which when executed resulted in the discovery of marijuana illegally possessed.

The Court of Criminal Appeals reversed the judgment of conviction, holding that the evidence seized was inadmissible because the search warrant was not valid.

The part of the search warrant quoted in that court's opinion follows:

"Affiant has received information from two different reliable informants that they have been in the above described residence on several occasions recently and there have been drugs that are above described in the residence of John Thomas Walding. Both informants have made numerous drug buys for affiant in the past two weeks and their reliability has been established. The last buy was made three days ago and was a good buy. Both informants state the above drugs of Marihuana and Mescaline are now in the house which is described above and occupied by John Thomas Walding, alias * * * John Doe, alias, whose name is unknown to the affiant."

The opinions in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, probably represent the strictest constructions and requirements of a search warrant ever reached by the Federal Supreme Court. The writer of this opinion authored State ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640 and, while not agreeing with the result reached in Aguilar or Spinelli, felt it was our duty to follow them and did follow and apply them in that case. But we concluded that opinion with the following quotation from Spinelli:

" 'The affidavit, then, falls short of the standards set forth in Aguilar, Draper, [Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327] and our other decisions that give content to the notion of probable cause. In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); that affidavits or probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1964); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697 (1960). * * *' "

Applying that test to the affidavit supporting the search warrant in the instant case, I think that this warrant does show a *probability* of criminal activity and that it is not necessary to make a prima facie showing. Also, that this affidavit, when tested by much less rigorous standards that those governing the admissibility of evidence, was adequate. Furthermore, that not confining the statements in the affidavit by niggardly limitations or restrictions or the use of common sense, there was adequate probable cause for the issuance of the warrant.

I think that this affidavit, when read as a whole and using a common-sense interpretation, states that the officers had been informed by two reliable informers that on several recent occasions, they had been in the Walding residence and the marijuana and mescaline had been there, and that these drugs are now in the Walding residence. It also shows that they are familiar with these drugs, sellers of drugs and where drugs are sold. Of course, the conclusion that they are "now" in the house could not, at that moment, be verified because the informers could not be in two places at one time, but the facts stated would, to a reasonable mind, "lead to the conclusion that the unlawful condition continued to exist on those premises at the time of the application for the warrant." Waggener v. McCanless, 183 Tenn. 258, 191 S.W.2d 551.

The vast majority of magistrates who issue search warrants in Alabama are not attorneys or "trained in the law." That deficiency will be partly remedied because of the ratification of the new Judicial Article to our Constitution on December 18, 1973, but it will still require legislative implementation. These magistrates are not familiar with the use of words like "said" and "aforesaid" but they merely follow one sentence with another, and by that method, try to tell a comprehensible and common-sense story. The same is true as to most law enforcement officers who form and compose the wording of the bases for the search warrants.

A reading of the opinion of the Court of Criminal Appeals demonstrates that it was necessary to apply a microscopic examination of the sentences and proceed to seek definitions of words to reach a conclusion that the affidavit was invalid. That is an excellent thing for an attorney to do when drawing or reading a contract or a deed, but even the Supreme Court of the United States does not require that kind of an examination of an affidavit supporting a search warrant.

I think the search warrant was valid under the cited decisions of the Federal Supreme Court, this court and the Court of Criminal Appeals.

I respectfully dissent.

HARWOOD, MADDOX and McCALL, JJ., concur.

MADDOX, Justice (dissenting).

I concur in all that Mr. Justice Merrill has said in his dissent, but wish to add a few additional views.

As Justice Merrill pointed out in Davis v. State, 286 Ala. 117, 237 So.2d 640 (1970), and again in his dissent, this Court was compelled to follow decisions of the Supreme Court of the United States, but he added that we did not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.

The exclusionary rule, which the majority applies, was "a *judicial-created remedy* designed to safeguard Fourth Amendment rights generally through its *deterrent effect,* * * * rather than a personal constitutional right of the party aggrieved." (United States v. Calandra, 1974, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561.) In *Calandra,* even the three dissenting justices admitted that "It is true that deterrence was a prominent consideration whether Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which applied the exclusionary rule to the States, should be given retrospective effect."

Even though *Calandra* involved the invocation of the exclusionary rule by Calandra in a grand jury proceeding and does not decide the question of the admissibility of illegally-seized evidence in a subsequent criminal prosecution of the search victim, such as is here involved with Horzempa, *Calandra* nevertheless seems to be a straw in the wind that the Supreme Court of the United States, as presently constituted, intends to re-examine the practical efficacy of the exclusionary rule in *all criminal proceedings.*[1]

As I read the "search and seizure" cases, most start out with the proposition that a *warrant* should be obtained in every case, if possible, but that there are many exceptions. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Here, there was a

---

1. At an Appellate Judges' Seminar held in Miami Beach, Florida in January, 1974, several state judges and justices from throughout the country seemed to think that the exclusionary rule may be re-examined by the Supreme Court and modified.

*warrant,* issued by an *independent magistrate.* A reading of the affidavit convinces me that the officer attempted to follow meticulously the requirements of the law in stating that his informer was credible. When the affiant said that his informers had stated that "the above drugs of Marijuana and Mescaline are now in the house . . ." it just seems to me that common sense dictates that they knew this as a result of sight, touch or smell. The majority apparently would approve this warrant if it had been said the informant had *seen* the drugs. I wish my brothers would not be this technical. By being so technical, they classify the police conduct here as "unreasonable"—the word used in the Fourth Amendment to the Federal Constitution and in Article 1, Section 5 of the Alabama Constitution.

They say the magistrate lacked "probable cause." I realize that the "search and seizure" cases of the Supreme Court of the United States in the last ten years have been rather technical and restrictive. The late Mr. Justice Black, in Whiteley v. Warden of Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), [dissenting opinion] 401 U.S. at page 570, 91 S.Ct. at page 1038, noted that *Whiteley* represented:

" . . . a gross and wholly indefensible miscarriage of justice . . . calculated to make many good people believe our Court actually enjoys frustrating justice by unnecessarily turning professional criminals loose to prey upon society with impunity."

*Calandra* says the exclusionary rule was a judicially made rule which was designed to *deter public officials* from violating Fourth Amendment rights. Is there one hint here that the conduct of the police, who took the information before a magistrate and got a warrant, acted in such a manner that their conduct should be *deterred*?

I believe *Calandra* constitutes a chink in the armor of the "exclusionary rule" which has been applied to turn so many criminals loose. I wish my brothers would examine this case in light of *Calandra.* I believe they would see that suppression of the evidence here will have no deterrent effect. It will only release another convicted person.

I wish the majority would examine the police conduct here with that condemned in *Mapp.* I think they would see the vast distinction.

Furthermore, I went to the record of the Court of Criminal Appeals to see what evidence, if any, there was before the issuing magistrate other than that contained in the affidavit. The record indicates there was none. The record does show there was a hearing before the circuit judge on the motion to suppress which was held in the "anteroom" of the court. There is no transcription of the evidence or arguments made at that time; therefore, I cannot tell whether the issuing magistrate had other evidence than that contained in the affidavit. If the defendant claimed error in the ruling of the trial court on his motion to suppress, it would seem to be incumbent upon him to show at the hearing on the motion to suppress that there was no other competent evidence before the magistrate to support the magistrate's issuance of the warrant.

I believe that the guilt of Horzempa was established by a fair and impartial trial. He had able counsel. I would affirm his conviction.