300 So.2d 439

**In re Ex parte Howard L. WHITE, Jr.**

**Ex parte Richard P. EMMET, Judge of the 15th Judicial Circuit, ex rel. ATTORNEY GENERAL.**

**SC 941.**

Supreme Court of Alabama.

Sept. 12, 1974.

█

William J. Baxley, Atty. Gen. and William G. McKnight, Asst. Atty. Gen., for petitioner.

No brief for respondent.

PER CURIAM.

Petition of Richard P. Emmet for Certiorari to the Court of Criminal Appeals to review and revise the judgment and decision of that Court in Ex parte White, 53 Ala.App. 377, 300 So.2d 420.

Writ denied.

All the Justices concur.

MERRILL, Justice (concurring specially):

I concur in denying the writ for certiorari because the Court of Criminal Appeals found as a fact from the evidence that Judge Emmet was biased.

The first Court of Appeals of Alabama was created in 1911, and from 1913 to the present, it has been the rule, with certain exceptions not here pertinent, that where a Court of Appeals has reached a conclusion of fact, this court would not, on certiorari, review the finding of that court. 4 Ala. Dig., Certiorari ☞68, 7 Ala.Dig., Criminal Law ☞1179.

To my mind, there is a stronger reason for denying the writ. As shown and catalogued in the opinion of the Court of Criminal Appeals, the matter of the *Latham* and *White* trials has been a widely publicized and continuing controversy between Judge Emmet and the Court of Criminal Appeals since December, 1973. It would be impossible for an open-minded person to read the opinion before us and not wonder if there was not some foundation for the charges of bias which have been made against Judge Emmet more than once in the circuit and appellate courts.

Our judicial system must generate and deserve the confidence of the people to remain effective. This is especially neces-

sary in this day of Watergate and its consequences. It is important for all judges, not only to try to see that justice is done, but to endeavor to maintain and preserve the appearance of justice.

In one of our recent cases, Morgan County Commission v. Powell, 292 Ala. 300, 293 So.2d 830, it was said:

"The statutory causes of disqualification of a judge are not exclusive of the common law principles on the same subject, one of which is that no judge ought to act where, from interest or any other cause, he is supposed to be partial to one of the suitors. Smith v. Pitts, 139 Ala. 152, 36 So. 20; Bryce v. Burke, Probate Judge, 172 Ala. 219, 55 So. 635. Nor should a judge act if he has any interest, the probable and natural tendency of which is to create a bias in the mind of the judge for or against a party to the suit. Woodmen of the World v. Alford, 206 Ala. 18, 89 So. 528."

Applying this test to the case before us, I conclude that it is correct for a judge other than Judge Emmet to try the *White* case.

Nothing contained herein is intended to question the integrity of Judge Emmet. He is widely known and the people of the 15th Judicial Circuit admire and respect him. It is unfortunate that the controversy existed, but since it did, it is better for the judge to step aside in these cases in order that not even a small segment of the circuit's population might wonder if, in view of all that has gone before, Judge Emmet was biased in these cases, which have been intertwined to some degree since December, 1973.

But the controversy will break out anew every time Judge Emmet presides over one of these trials and, once again, the public will be influenced to doubt the fairness of the judicial process in those cases. The way to end the controversy is to have the cases tried before another circuit judge. That is the effect of the opinion of the Court of Criminal Appeals. I do not subscribe to all that is contained in that opinion, but to my mind, the result reached is necessary.

MADDOX, Justice (concurring specially).

I agree that the writ should be denied.

The petition to have Judge Emmet recuse himself was filed before the Court of Criminal Appeals. That court found that the totality and cumulative facts before it "created a situation of bias that could only result in prejudice to the petitioner." The Court of Criminal Appeals, therefore, made a specific finding that Judge Emmet was biased.

As Mr. Justice Merrill points out in his special concurrence, it is axiomatic that this Court will not, on certiorari, review the determination of the Court of Criminal Appeals, on a question of fact. 4 Ala.Dig., Certiorari ☞68. However, I think that the Court of Criminal Appeals has reached a result in Judge Emmet's case which is contrary to the one reached by its predecessor in Ex parte Thompson, 23 Ala.App. 46, 121 So. 429 (1929); cert. den. 219 Ala. 139, 121 So. 432 (1929). In denying certiorari in Thompson, this Court said that it agreed with the conclusion reached by the Court of Appeals in that case.

When the facts of the petition in this case are put alongside the petition in the *Thompson* case, it is difficult for me to see how the Court of Appeals could find that Judge J. Russell McElroy was qualified to sit in the *Thompson* case, and Judge Emmet is disqualified to sit in this case. In *Thompson,* the petitioners claimed that Judge McElroy was formerly an assistant attorney for the City of Birmingham and that he was a prosecution oriented judge. Specifically, the petitioners there claimed that immediately upon assuming his duty as judge, Judge McElroy, without notice to defendants, dismissed several hundred appealed cases; that Judge McElroy instructed the court clerk to let no other judge try the cases but himself; that he set aside an

order of another circuit judge in certain of the appeal cases; that he assumed absolute jurisdiction over such cases, forbidding other judges to act therein, and that he did other acts prejudicial to the rights of the petitioners.

In addition, it was further averred that Judge McElroy made public statements to the effect: " 'That there were too many forfeitures in the appealed cases; . . . that they should be stopped by dealing severely with those who forfeited at the time that they were set for final action, and that no defendant permitting a forfeiture on his bond should have a trial; . . .' " The petitioners also claimed that Judge McElroy gave public interviews to the effect that the petitioners had opposed his election as circuit judge, and that petitioners were making a determined effort to embarrass the administration of justice.

The Court of Appeals, in Judge McElroy's case, found:

".  .  . We have examined critically the petition, and conclude that it nowhere sets up any of the grounds of disqualification of the said J. Russell McElroy, judge, etc., to sit as judge in the cases described in said petition, prescribed by the statute . . . or those *imposed by the common law.*" 23 Ala. App. at 50, 121 So. at 431–432. [Emphasis added.]

I believe that everyone would agree that the present Court of Criminal Appeals has applied a more stringent standard to Judge Emmet than its predecessor court did in Judge McElroy's case. But, I must admit that in its fact-finding role, the Court of Criminal Appeals had the prerogative to draw inferences from the evidence. I also agree with what Mr. Justice Merrill has said that there was evidence from which a finding of disqualification could be made in Judge Emmet's case. Consequently, under the rule that we accept the findings of fact made by that court, I concur in the judgment that the writ should be denied.

As Mrs. Justice Merrill has pointed out also, the record shows that there has been a constant disputation between the Circuit Court and the Court of Criminal Appeals in this matter. It all began when Judge Emmet sent a letter to the members of the Court of Criminal Appeals requesting that they not reduce the amount of the bonds in three cases, one of which involved Howard White. On December 18, 1973, each member of the Court of Criminal Appeals signed a letter of transmittal of the Emmet letter to the Chairman of the Judicial Commission. Charges were filed on March 5, 1974, against Judge Emmet charging him with "misconduct in office" for sending the letter requesting that the bonds not be reduced. Judge Emmet was tried before the Court of the Judiciary on the charges and that court found that Judge Emmet was guilty of "misconduct in office." Judge Emmet appealed to this Court and this Court reversed the finding of misconduct made by the Court of the Judiciary. In re Emmet, 1974, 292 Ala. 143, 300 So.2d 435.

In another instance, Judge Emmet was ordered to reduce bail for Ruby Latham or show cause why he should not be held in contempt. From the statements appearing in the opinion of the Court of Criminal Appeals, it appears that Judge Emmet personally appeared before the Court of Criminal Appeals on the show cause order. He was not held in contempt. I relate the above for the purpose of showing that there have been disputations between Judge Emmet and the Court of Criminal Appeals since December, 1973, involving these criminal cases. A proper administration of justice would seem to require that this conflict end.

Since there are circumstances presented from which the Court of Criminal Appeals could find that Judge Emmet could not conduct White's trial in an impartial manner, I concur in denying the writ of certiorari.