DeCARLO, Judge
(dissenting).
In the present case, the affiant swore that his informer’s “record of reliability for correctness has been good.” This in my judgment goes beyond the conclusory statement that the unidentified informant was a “credible person.”
Unlike Aquilar, the affirmation in question provides a means to judge the informant’s reliability. The officer here swore to a basis for accepting the informant’s story and that was his attestation to the *51 informant’s previous record of reliability for correctness. This statement presents just as good a foundation for belief as one detailing the number of times the informant has given correct information.
The Supreme Court of Alabama in State, ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640, denounced the “batting average” requirement in this language:
“ . . . [N]o ‘batting average’ is required to establish the reliability of the informer. If the affiant so desires, he may cite prior instances of proven reliability, but it is not a requirement.”
Perhaps more important is the fact that Aguilar’s other test has been satisfied.
The affidavit does contain a sufficient statement of the underlying circumstances from which the informer concludes that Neugent was in possession of illegal narcotics.
We are told in the affidavit that:
“ . . . The aforesaid informant stated that he saw the said illegal drugs on said premises described on the 9th day of August, 1978, 3 hours prior to making this affidavit. The informant also stated that Lewis Neugent, who resides at the above address, was seen selling amphetamines at the truck stop but the amphetamines are brought from the residence. This information was given to me by said informant August 9th, 1973.” (Emphasis ours).
It is alleged that the informer has personal knowledge that the drugs were on the said premises three hours before the affidavit in question was executed.
The report details the means by which the information was gathered and describes the criminal activity in a manner that enabled the magistrate to know it was not a casual rumor or an offhand remark obtained at the truck-stop.
Although the affidavit does not specifically say the informer saw Lewis Neugent sell the amphetamines, it does say that the “amphetamines are brought from the residence,” and that the informant stated Lewis Neugent resided at the above address.
What was alleged in the informer’s tip certainly was cause to believe that a crime was being committed. It provides a substantial basis for the magistrate to conclude that narcotics were probably present on the premises and that was sufficient.
I do not believe this affidavit falls short of the standards set forth in Aguilar, and as explained in U. S. v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684.
“ . . . [Affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers. from submitting their evidence to a judicial officer before acting.”
Mr. Justice Goldberg went on to say:
“ . . . [W]here reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner.”
For these reasons, I respectfully dissent.