361 So.2d 22 (1978)
S. T. RICKMAN, alias
v.
STATE.
6 Div. 540.
Court of Criminal Appeals of Alabama.
January 24, 1978.
Rehearing Denied February 21, 1978.
*23 Ralph I. Knowles, Jr., of Drake & Knowles, Tuscaloosa, for appellant.
William J. Baxley, Atty. Gen. and Winston D. Durant, Asst. Atty. Gen. for the State, for appellee.
BOOKOUT, Judge.
Illegal possession of cocaine; sentence: $300 fine and three years imprisonment.
The only issue presented concerns the warrantless stop and search of the appellant and his automobile. The State contends that the search was legal for it was made with probable cause coincidental with exigent circumstances, which is an exception to the warrant requirement. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973).
Lt. Lloyd Russell, a Tuscaloosa policeman and chief of the West Alabama Narcotics Squad, testified that around 11:30 A.M. on Sunday, June 6, 1976, he received a telephone call at home from an informer. The informer, Dwight Bingham, told Russell that he had been in the presence of the appellant the previous night, that appellant stated he was coming to Bingham's house on Sunday to watch a basketball game on television, that he would arrive there by 3:00 P.M., and that he would be bringing cocaine with him. Russell said Bingham also told him that the appellant would be coming to Tuscaloosa from Eutaw, and told him the type automobile the appellant would be driving and the vehicle tag number.
After receiving Bingham's call, Lt. Russell placed calls to various officers of the narcotics squad. He was able to assemble four officers at the squad office by 12:30 P.M. that day. Russell and the other officers then proceeded in four cars to the Foster's exit on Interstate 59, arriving there at approximately 1:00 P.M. Around 4:15 P.M., the appellant was spotted coming onto the interstate highway. Officer H. M. Turner was directed by radio by another officer to stop the appellant's automobile, which he did. By the time Lt. Russell arrived at the scene, Officer Turner had already searched the appellant. Turner said he found a small vial about two inches long in the left front pocket of appellant's clothing which contained .219 grams (.00772 ounces) of cocaine. The automobile was searched, but no contraband was found.
Although Lt. Russell received the tip at 11:30 A.M. and had a squad of four cars assembled on the highway by 1:00 P.M., neither he nor any of his officers attempted to obtain a search warrant. Russell testified that it would have been possible, with a minimum of effort to have obtained a warrant on Sunday, having done so on weekends before. He said he did not attempt to do so on this occasion because he did not think he had enough information to establish probable cause to obtain a search warrant. Therefore, he assembled his squad on the highway and made the search without a warrant.
*24 It is the State's theory that probable cause arose when the informer's tip was confirmed by officers seeing the appellant's automobile traveling toward Tuscaloosa near the time specified in the tip. The State contends that the mobility of the automobile gave rise to exigent circumstances which, being coincidental with probable cause, permitted police to stop and search the appellant and his automobile without a warrant.
A key question is whether Lt. Russell had probable cause to secure a warrant at the time he received the tip. A second key question is whether exigent circumstances actually arose which prevented the officers from obtaining a warrant.

I
Could Lt. Russell have obtained a search warrant based upon the tip from his informant? We think so.
"Probable cause may be based solely upon information obtained from a reliable informanthearsay information. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Clenney v. State, 281 Ala. 9, 198 So.2d 293 (1966). A tip may supply the basis for probable cause in and of itself where it discloses (1) some of the underlying circumstances which justify a conclusion that the informer is credible or his information is reliable, and (2) some of the underlying circumstances tending to demonstrate that, in the specific instance in question, he has drawn his conclusion of criminality in a reliable manner. Aguilar, supra. These two tests are the dual `prongs' of Aguilar, the veracity prong and the basis of knowledge prong. They constitute the initial standard to be applied in assessing the probative value of an informant's information. If the tip fails one of these prongs, the informant's report may still constitute the sole basis for a finding of probable cause if the information provided is in such detail and minute particularity that a `magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way.' This is the self-verifying tip. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). . . ." Hatton v. State (1977) Ala.Cr.App., 359 So.2d 822.
In the instant case, we find the officer had received information from an informer with a record of reliability. Although Lt. Russell had made no other arrests based upon information given by Bingham, nevertheless the State and the defense through cross-examination established that Bingham had given Russell information on numerous occasions which had been checked out and proved to be correct. Our Supreme Court has held that ". . . no `batting average' is required to establish the reliability of the informer. If the affiant so desires, he may cite prior instances of proven reliability, but it is not a requirement." State ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640 (1970); Clenney v. State, 281 Ala. 9, 198 So.2d 293 (1966).
In obtaining a search warrant in Alabama, very little is required of the affiant to prove the reliability of his informer. In fact, all that is required is a recitation that the information came from, "a person whose record of reliability for correctness has been good." State ex rel. Attorney General, supra; Neugent v. State, Ala., 340 So.2d 52 (1976).
Lt. Russell's sworn testimony that Bingham had given him information on several occasions which proved to be correct is certainly sufficient to meet the "veracity prong" of Aguilar, supra, as interpreted in State ex rel. Attorney General and Neugent, supra.
As to the "basis of knowledge prong," it was the testimony of Lt. Russell that the informer told him that he was personally in the presence of the appellant the prior night when appellant told him he was bringing cocaine to Bingham's house the next day, and that he was coming to watch a 3:00 P.M. basketball game on television. We deem this to be sufficiently reliable information. It tells us how the *25 informer got his informationdirectly from the appellant, as opposed to a "rumor circulating in the underworld," street gossip, or other unreliable source. Thus, we conclude that Lt. Russell had probable cause to obtain a search warrant if he had time to do so.

II
Did exigent circumstances arise coincidental with probable cause so as to prevent officers from obtaining a search warrant? We think not.
If Lt. Russell had probable cause to secure a warrant at the time he received the tip, he could not neglect to do so and then assemble a task force to await the development of an exigent circumstance which he had reason to believe would occur some three and one-half hours later. An exigent circumstance is a spur of the moment happening, not an expected circumstance which will happen hours later at a known point in time. Exigent circumstances are "now or never" situations where police must properly act to preserve evidence of a crime. Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).
We fully recognize that automobiles present a peculiar and difficult problem in the area of search and seizure which did not exist at the time of the adoption of the Fourth Amendment. A so-called "automobile exception" to the warrant requirement has been judicially created through a line of cases beginning with Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). We likewise recognize that in some rare instances, probable cause to search may exist for some time prior to an exigent circumstance arising. Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (a plurality opinion of four justices concerning the search of the exterior of a seized automobile). However, the instant case does not fall within one of the exceptions to the warrant requirement of the Fourth Amendment merely because an automobile happened to be involved. Warrantless searches are still considered as unreasonable per se unless the facts of a particular case bring it within one of a few "specifically established and well-delineated exceptions." "The word `automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
If the State's interpretation of exigent circumstances prevails, then the search warrant requirement of the Fourth Amendment would be meaningless as a practical matter. Police, having probable cause to obtain a search warrant, could merely keep a suspect under surveillance until at last he became mobile, and then leap forth and make a warrantless search.
Time is critical in cases where exigent circumstances prevent the officer from obtaining a warrant. In Kirkland v. State, Ala.Cr.App., 342 So.2d 806 (1977) exigent circumstances arose because the informants tip came at almost the same time the appellant was expected to be arriving in the vicinity carrying marijuana. The fact situations in Kirkland and the instant case are similar but distinguishable.
In Kirkland, the informant called the officer on a Sunday morning and stated that the appellant was then in route from Florida to Dothan with approximately five pounds of marijuana in a 1973 green Chevrolet Vega stationwagon and would be arriving in Dothan "almost any time." The officer then took immediate action upon the tip of his informant. He telephoned for assistance from another officer, but was unable to obtain it. He then drove directly to the appellant's home and did not see the stationwagon. He immediately drove to a point on the highway from Florida coming into Dothan and set up surveillance by himself. He used his police radio to obtain the tag number of appellant's vehicle from the state troopers. Around 2:00 P.M., he saw the appellant driving the vehicle in question and he then effectuated the search and seizure.
This court upheld the legality of the search and seizure in Kirkland on the *26 grounds that it would have been foolish for the officer to leave his observation post and try to find a magistrate on Sunday to obtain a search warrant. In the instant case, there was no such problem. Here, there was ample time to obtain a search warrant. Even after the officers were placed in position on the highway, Lt. Russell could have left, gotten a warrant and returned before the expected time of arrival of the appellant. Lt. Russell testified that it was not necessary that he be at the scene of the arrest. In fact, he was not present at the time the appellant was stopped and searched, but arrived a few moments later.
There is no showing in the record that time was a critical factor in the instant case. Lt. Russell first testified that his informer told him the appellant could be coming to Tuscaloosa any time between noon and 3:00 P.M. However, he subsequently changed his testimony to state that the informant said the appellant would arrive by 3:00 P.M. Lt. Russell's notes, written almost contemporaneously with the events in question, were used by him in testifying and were made an exhibit in the case by the defense. Those notes were to the effect that the informer said the appellant would arrive around 3:00 P.M. Likewise, Officer Turner testified that Lt. Russell told him the appellant was coming in at approximately 3:00 P.M. Turner stated that the officers went out ahead of that time in case the appellant came early.
Unlike the situation in Kirkland, here Lt. Russell testified that he would have had no difficulty in obtaining a warrant on Sunday. He was not conducting the surveillance by himself, but had four other officers assembled in four automobiles equipped with two-way radios. The evidence reveals no urgency of action as shown in Kirkland. Here, instead of taking immediate action upon the informer's tip, Lt. Russell placed calls to members of his narcotics squad. They did not assemble on the highway or at the expected destination of the appellant. They assembled instead at the office of the narcotics squad and then drove to the point of surveillance on the highway, arriving some hour and a half after the tip was received. After establishing surveillance, two hours remained before the appellant's expected time of arrival (or three hours and fifteen minutes before his actual arrival). This was ample time for Lt. Russell to have obtained a search warrant and returned to his men, which he stated he could have done.
The time frame in this case is easily distinguishable from that in Chambers v. Maroney, supra, and in Baker v. State, Ala. Cr.App., 340 So.2d 854, cert. denied, Ala., 340 So.2d 860 (1976). In Baker, supra, this court specifically stated: "The time frame in which the officers had to get a search warrant in this case after receiving the telephone call from the informer afforded no time to seek the issuance of a search warrant." That statement could not be made about the instant case.

III
The State apparently contends that probable cause only arose when officers corroborated the tip by observing the appellant on the highway coming toward Tuscaloosa and that exigent circumstances then also arose.
Whether appellant's presence on the highway was corroborative of the informer's tip is not controlling here. There is no need to corroborate a tip which is from a reliable informer and is not lacking in sufficient information. Where the informer's reliability is unknown or questionable, or where his tip is lacking in detail, probable cause may be established by corroborating the tip. This may be accomplished by an accumulation of innocent details conforming to the tip, per Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); and United States v. Brennan, 538 F.2d 711 (C.A. 5, 1976).
Although the appellant's destination was known, officers did not set up their surveillance at that particular site (which would have been more corroborative of the tip), but instead selected a point on the interstate highway. We doubt that the appellant's appearance on the highway at 4:15 *27 P.M. would be of significant value for corroborating a tip that he was coming to Bingham's residence by 3:00 P.M. Even if his presence on the highway at that late hour could be considered as an incriminating circumstance or detail corroborative of the tip, still there was no need for corroboration. As discussed in Section I above, the tip came from a reliable informer who obtained his information in a reliable manner. Neither was the tip lacking in information. Thus, Lt. Russell had sufficient probable cause to obtain a warrant on the basis of the tip without the need of corroborating its details.
After a hearing on the appellant's motion to suppress the evidence obtained by the search in question, the trial court ruled in favor of the State, upholding the legality of the search. The appellant then waived a jury trial, and the case was submitted to the trial court upon the evidence presented on the motion to suppress. The trial judge found the appellant guilty and sentenced him in accordance with the recommendation of the district attorney. The search and seizure issue was therefore expedited to this court without the delay and cost necessitated by a jury trial.
Based upon the foregoing reasons and authorities cited, it is our opinion that the trial court should have granted the appellant's motion to suppress the State's evidence gathered as a result of the search and seizure in question.
Reversed and Remanded.
All the Judges concur except DeCARLO, J., dissents.
DeCARLO, Judge, dissents.
The majority opinion in this case states that a reversal is required because, first, exigent circumstances did not arise coincidental with the probable cause for the ensuing search, and two, Lt. Russell had ample time to obtain a search warrant.
It is true that even though an automobile is involved in a search situation without a warrant, that fact alone, does not demonstrate that exigent circumstances exist. Exigency evolves because of the circumstances created by the inherent mobility of automobiles. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000.
In my judgment, in examining exigent circumstances, two things must be taken into consideration. One, is where the automobile is located at the time of the attempted search, and two, whether the automobile is mobile or movable [operational].
The ability of an automobile to be moved to an unknown location or beyond the jurisdictional reach of police officers makes a resort to a search warrant impractical. It is this mobility of an automobile that has given rise to the court's decision holding that if an officer has reasonable cause to believe an automobile contains contraband, then the officer may conduct a reasonable warrantless search. Carroll v. United States, supra. It is equally true that occupied automobiles stopped on the open highway may be searched without a warrant because they are mobile or movable. Carroll v. United States, supra.
In Coolidge v. New Hampshire, supra, the automobile although mobile, and movable, was located in the accused's driveway, not on a public highway as in Chambers v. Maroney, supra; Carroll v. United States, supra, or located on a public parking lot as in Cardwell v. Lewis, supra. The impracticality of securing a search warrant because the automobile could have been moved did not exist in Coolidge v. State, supra. It is abundantly clear that there is significant constitutional difference between stopping, seizing, and searching a car on a open highway, and entering private property to seize and search an unoccupied, parked vehicle not being used for any illegal purpose.
In the present case we have a car stopped on a open highway in a mobile and movable condition [operational]. It is because of its inherent mobility on the highway that the circumstances of exigency are created. South Dakota v. Opperman, supra.
In my judgment, without question, this automobile stopped by Lt. Russell's men on the highway was under exigent circumstances.
*28 In Cardwell v. Lewis, supra, the Supreme Court observed:

"Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. Cf. Chambers, id, at 50-51, 90 S.Ct., at 1980-81. The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." [Emphasis ours].
The validity of this search is not whether Russell and his fellow officers could have secured a warrant to search the appellant's car. Rather, it is whether the search without a warrant was reasonable. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730.
The validity of all searches and seizures must be determined from the facts and circumstances in each case in the light of the Fourth Amendment's prescription of unreasonable search and seizure. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.
The facts of the present case clearly established that the officers had reasonable cause to make the ensuing search. At the time the officers made the search, the facts and circumstances within their knowledge, and of which they had reasonable trustworthy information, was sufficient to warrant a prudent man in believing that the appellant was carrying contraband in his car. The majority opinion acknowledges that probable cause existed well in advance of appellant's car being stopped.
Under the facts recited above, I am of the opinion that the search and seizure of appellant's vehicle was under exigent circumstances. The car containing the contraband was mobile or movable and located on the open highway.
The fact that Lt. Russell could have obtained the warrant earlier, did not foreclose the officer's right to search even though probable cause had existed for approximately five hours. Cardwell v. Lewis, supra.
Based on the foregoing, I respectfully dissent.