[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 347 
Possession of barbiturates in violation of the Alabama Uniform Controlled Substances Act; fifteen years and a fine of $1,000.
Officer Ray W. Plant was a member of the Auburn Police Department in the vice and narcotic division. On May 1, 1975, he obtained a search warrant for a trailer occupied by Anna C. Brookshire and the appellant, Milton Satterwhite. At approximately 2:30 P.M., Plant along with three other officers arrived at the trailer located at 250 Gentilly Trailer Park, Auburn, Alabama. When they arrived there was no car parked near the trailer and the officers waited for about thirty minutes before going to the door. Around 3:00 o'clock, Plant knocked on the door. Miss Brookshire came to the door and he identified himself and showed her the search warrant.
At this point, in the testimony, the trial was recessed on defense counsel's request and a hearing on appellant's motion to suppress was conducted outside the presence of the jury. The only witness to testify at the hearing was Officer Ray W. Plant who was on the stand at the time the trial was recessed. Plant had testified that he executed an affidavit to obtain the search warrant and identified that affidavit and search warrant. He stated that the informant who supplied the information was not present at the time the search was conducted. Further, Plant said that he had never seen the appellant prior to the search and that the appellant did not arrive until the search had been completed.
Plant testified that he had called the manager of Gentilly Trailer Park and asked who owned the trailer in question. He was told that the owner was Anna Claire Brookshire and that she also rented the lot where the trailer was located.
On further questioning, Plant said that he received information from the informant that the appellant and Brookshire both resided in the trailer. He also testified that he was allowed, under the search warrant in question, to search not only the premises, but all persons found on the premises and Miss Brookshire's automobile.
When Plant saw the appellant, he did not have any drugs on him, but according to Plant "two roaches" (marijuana cigarettes) were found in the ash tray of Miss Brookshire's Volkswagen which appellant was driving when he returned to the trailer. *Page 348 
At the conclusion of Plant's testimony, the voir dire hearing was ended and the court, in denying the motion to suppress stated:
 "THE COURT: Well, Mr. Nix, the Court has examined the affidavit here and the statement that this officer swore to Judge Lane, who issued this, that he had reason to believe that Anna Claire Brookshire and Milton Satterwhite lived in the trailer; that he had information furnished to him by a reliable informant; that that information was reliable, in his opinion, because he had given information in the past which led to several arrests on drug charges, and that that informant had seen marijuana in this residence within the past two days, which I believe is plenty recent enough, so I'm going to overrule your objection.
"MR. NIX: Most respectfully except.
 "Also, as another ground on the motion to suppress, I would like to object to this evidence on the ground that the description of the premises was not that of the defendant, Milton Satterwhite.
"THE COURT: Overruled and denied on that ground."
The jury was subsequently returned to the courtroom and the trial proceeded.
Plant resumed his testimony and stated that after handing the search warrant to Miss Brookshire "it appeared she read it."
According to Plant, the officers searched the inside of the trailer and the area surrounding it. He recalled that the mobile home had two doors and, on entering the door that would normally be used, one would enter the living room area with the kitchen being immediately to the right.
Plant testified that in the living room the officers found a roach holder which he explained was a small instrument used for holding marijuana cigarettes in order to prevent burns to the fingers. In the kitchen area they found two pipes with marijuana residue and a bottle containing marijuana seeds. Two or three other roach holders were found in the back bedroom. Also in the back bedroom men and women's clothing were found as well as men's shoes and "there were men's dirty clothing laying in the floor."
Plant said that the search of the trailer's interior revealed a total of five roach holders containing residue, two sets of scales, one cigarette roller and a bottle containing marijuana seeds. He testified that in a search of the exterior of the trailer, a plastic bag containing marijuana seeds and a tobacco pouch were found in one of several hollow concrete blocks being used as steps to one of the trailer doors. Inside the tobacco pouch the officers found "a small quantity of marijuana and a small plastic bottle." The bottle held a plastic bag which "contained a quantity of hash in it and in the bottom of the bottle was a variety of pills."
According to Plant, all of the items were returned to the original containers and, before being sent to the State toxicology lab in Auburn, they were locked in an office safe. The following morning, May 2nd, they were sealed in individual envelopes and given to Officer Billy Gene Holden who carried them to the lab.
The officers also seized several pieces of mail addressed to the appellant at the trailer park address. One was a letter bearing a return address of the Auburn-Opelika Elks Lodge, with a postmark of January 23, 1975. The other two pieces of mail were copies of the newspaper, "Plain Truth," addressed to the appellant at the trailer address. These items bore a postscript of April 5, 1975 and April 19, 1975.
Plant testified that around 4:00 P.M. following the search of the trailer and surrounding area, the appellant drove up in Miss Brookshire's Volkswagen. When Satterwhite walked up Plant asked, "Are you not Milton Satterwhite?" According to Plant, Satterwhite replied that he was not. Plant identified himself as a police officer and again asked the appellant if he was Milton A. Satterwhite and again he gave a negative answer, "No, sir."
Officer Alex Smith, who was inside the trailer, looked out the front door, recognized the appellant, and said: "Hey, *Page 349 
Milton." Following Smith's identification of the appellant as Milton Satterwhite, Plant "placed him under arrest and read him his rights." On further questioning, Plant said that it was Officer Bill G. Holden who searched Miss Brookshire's Volkswagen.
On cross-examination, Plant testified that the search of the premises occurred over a period of an hour and appellant was not present during this time. Further, Plant said that the paraphernalia found in the concrete blocks was visible if an individual was positioned at a right angle "looking up in the block" as opposed to "just standing facing the block."
Officer Plant testified that no attempt was made to lift fingerprints in the trailer or on the items recovered during the search.
Plant said that trousers found in the back bedroom of the trailer were the type that could be worn any season of the year, but said he did not check the size of the clothing or ask who owned them. During further cross-examination, Plant testified that he was aware that Milton Satterwhite once resided in Wedowee, Alabama, but was not familiar with any place of residence that the defendant had in Lee County other than "250 Gentilly Trailer Park." He also said he was not aware of any move that the defendant was engaged in that would require him to store his clothes at the trailer.
According to Plant, he did not see the appellant place the drugs on the premises around the trailer nor did he know of any facts that would indicate that he did so. Further, he said that he had no information to show that the periodicals and letter mailed to the defendant were actually received by him, other than the fact that they were addressed to the defendant and the letter had been opened.
Alex Smith was an undercover officer with the vice and narcotics division of the Auburn Police Department. On May 1, 1975, he, along with Lt. Winfree, Bill Holden and Sgt. Bishop accompanied Plant to the trailer park where the search was conducted.
Smith testified that when the defendant arrived he and Sgt. Bishop were standing in the doorway of the trailer and Plant was outside. According to Smith, Plant asked the appellant if he was Milton Satterwhite and the response was, "No." Smith said at that time he was looking out the doorway which was partially open, and, when the appellant denied that he was Milton Satterwhite again, he (Smith) stepped out of the trailer and said, "Hi Milton," and the appellant said, "Oh, Alex."
Smith stated that he had known Milton Satterwhite prior to this occasion having met him initially around the middle of March, 1974. He went on to say that he had never seen the appellant in the trailer until the day of the search. On cross-examination he said that he had received information from an informant that Satterwhite lived there. Smith acknowledged that he did not see the appellant place any drugs in the trailer.
Officer Billy Gene Holden was another officer who had gone to search the trailer on May 1, 1975. He testified that he did not assist in the search but was parked approximately 100 yards from the trailer. According to Holden, when the defendant drove up to the trailer, he and Lt. Winfree drove to the Volkswagen the appellant had been driving and searched it. They found several packages and boxes inside the car, and in the glove compartment found a match box containing "a roach and some marijuana seeds." Further Holden said they found several cigarette lighters, pen and pencil sets, and three or four leather tobacco pouches similar to the one that Officer Plant had found in the cement block.
Holden testified that on May 2, 1975, Plant gave him two sealed brown envelopes and that he drove straight to the toxicology lab where he turned them over to Dr. Taylor Noggle.
Dr. Taylor Noggle, a State toxicologist, testified that on May 2, 1975, Lt. Winfree of the Auburn Police Department gave him several sealed manila envelopes. One envelope contained two clear-shaped standard gelatin capsules in which a laboratory *Page 350 
analysis revealed the presence of pentobarbital and carbromal. In the other envelope there were four white circular unmarked tablets which after analysis showed a presence of phenobarbital.
At the conclusion of Noggle's testimony, the State rested its case. At that point the jury was excused from the courtroom and defense counsel made a motion to exclude the State's evidence on the grounds that the State had failed to make out a prima facie case. After a hearing, the court stated:
 "The Court's of the opinion that there is more than sufficient evidence to go to the jury on the question of whether or not he was in possession of the premises there. I feel that there is a jury question.
 "I further feel that whether or not he was in control of these particular drugs found there in the location that the evidence showed, that is out there underneath the steps there in the concrete block, would also be a jury question as to whether or not he knew and was conscious of the fact that those drugs were there and therefore, whether he was in possession of them, constructive possession, and for that reason the Court is going to overrule your motion to exclude the State's evidence."
The jury was returned to the courtroom and Ralph Moon was called to testify on the appellant's behalf. Moon stated that he knew the appellant, Milton Satterwhite, and that he lived between Roanoke and Wedowee in Randolph County, Alabama. He testified that Satterwhite had lived in this particular place for approximately one year and that he had seen Satterwhite around the house "quite a few times."
During cross-examination, Moon said that he had visited in the appellant's home in Randolph County about eight or ten times, the last time being approximately two months before the trial. According to Moon, Satterwhite was at the house and appeared to be living there alone.
Carey Orr and his father ran a bike shop in Roanoke, Alabama. Orr testified that he knew the appellant and that Satterwhite lived "about half-way between Roanoke and Wedowee; about four miles outside of Roanoke." During cross-examination, Orr said that the appellant was in the contracting-painting business and that the last time he talked to him was about a month prior to the trial.
Orr said that he had been to the appellant's house near Roanoke several times, both during the day and night.
Robert Bailey lived near Roanoke, Alabama in Randolph County and testified that he knew the appellant, Milton Satterwhite. He stated that the appellant lived about half-way between Roanoke and Wedowee and on Thursday, May 1, 1975, he was with the appellant. Bailey explained that on Wednesday afternoon, April 30th, he had taken the appellant to the trailer at 250 Gentilly Trailer Park. During cross-examination, Bailey testified that he left Satterwhite at the trailer and that Satterwhite told him "he was coming home that Thursday."
During questioning by the court, Bailey stated that he had been to the trailer approximately once or twice to see Anna Claire Brookshire and that the appellant was there on one of these occasions.
At the conclusion of Bailey's testimony, the defense rested its case and no further evidence was presented.
 I
Appellant asserts that his motion to suppress evidence seized by the State under warrant should have been granted for the following reasons.
 A
The affidavit in support of the search warrant does not aver sufficient probable cause to support the issuance of a search warrant for the premises located at 250 Gentilly Park and for Anna Claire Brookshire's automobile.
 B
The language of the search warrant authorized a general exploratory search. *Page 351 
 C
The search extended beyond the items listed to be seized.
 D
The return in this case was faulty because it did not list all of the items seized in the search.
 E
The trial court was in error when it prevented the appellant's inquiry into the face of sufficiency of the underlying affidavit.
Our discussion of the foregoing will follow in the order of their appearance.
The supporting affidavit in question contains the following allegation:
 ". . . . That the informant has seen marihuana in the above described residence within the past two days and said informant has also seen a quantity of marihuana seeds being germinated within the above described residence. That the informant has given information in the past which has led to arrest and convictions on drubs [sic] and said informant's information has always proven true, and correct and reliable."
The Supreme Court of the United States said in Aguilar v.Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, that a neutral and detached magistrate must draw inferences from the underlying circumstances that would indicate to him that the narcotics are where they are claimed to be and that the informant's information is reliable. The court in Aguilar, supra set up a two pronged test by saying:
 "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informer, . . was `credible' or his information `reliable.'"
In our present case, the appellant complains that the affidavit was inadequate under the Aguilar standards. He argues that the affidavit failed to state any evidence, other than hearsay, that would justify a conclusion that the subject of the search (marijuana) was where the affiant said it was (250 Gentilly Trailer Park).
In Davis v. State, 286 Ala. 117, 237 So.2d 640, the Supreme Court held that Aguilar, supra, and Spinelli v. United States,393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, did not require "anything more than a showing of circumstances necessary to enable the magistrate to determine the validity of the informant's conclusion that the narcotics are where he says they are. This may be an independent corroborative observation of the officers themselves or it may be from information reviewed from the informer himself."
Hearsay information in an affidavit need not be independently corroborated if there is a substantial basis for crediting the hearsay. Moore v. State, Ala.Cr.App., 340 So.2d 882.
In the present case, the affidavit alleges that the informant saw marijuana and marijuana seeds being germinated on the premises at 250 Gentilly Trailer Park. A similar statement was held sufficient in Neugent v. State, Ala.Cr.App.,340 So.2d 55. Thus, the affidavit in question measured up to the first prong of the Aguilar test.
The appellant further argues that the affidavit did not measure up to the second prong of the Aguilar test because it failed to set forth facts which demonstrated the reliability of the informant. He proposes that the statement, "the informer has given information in the past which has led to arrest and convictions on drugs and said informant's information has always proven true, and correct, and reliable," amounts to nothing more than a conclusion of reliability.
The Supreme Court in State, ex rel. Attorney General,286 Ala. 117, 237 So.2d 640, held that an affiant's conclusory statement *Page 352 
that the informant's record of reliability for correctness has been good satisfied the informer's veracity test under Aguilar, supra and Clenney v. State, 281 Ala. 9, 198 So.2d 293. Here the statement goes beyond a mere conclusion of reliability and alleges that the informant's information has led to arrests and convictions. These were facts capable of proof which go to aid a magistrate in making an independent determination that the informant was "credible" or that his information was "reliable."
In our judgment, the affidavit adequately demonstrated the basis of the officer's conclusion that the informant was reliable, and was therefore sufficient to satisfy the veracity prong of the Aguilar test.
 B
The appellant insists that the very language of the search warrant authorized a general exploratory search which is forbidden by federal and state courts alike. He argues that a close reading of the affidavit and the search warrant justifies the conclusion that the search was nothing more than a general exploratory search under the test set out in Peavy v. State, Ala.Cr.App., 336 So.2d 199.
The search warrant in Peavy, supra, in pertinent part, reads:
 "You are therefore commanded, in the day time, or night, to make immediate search on the person of each and every person present in or near said mobile home and any motor vehicle adjacent to said mobile home for the following property."
In Peavy v. State, supra, this court held that the pertinent part of the search warrant recited above was a complete departure from the affidavit and that by its very language it was a "dragnet instrument" which authorized a general exploratory search.
In the present case, the search warrant in pertinent part reads:
 "You are hereby commanded to make immediate search on the person and premises of Anna Claire Brookshire, alias and Milton Satterwhite, alias, at # 250 Gentilly Park located on Webster Road and said residence occupied by said Anna Claire Brookshire, alias and Milton Satterwhite, alias. Said search to be conducted during the daylight hours and said search to include all persons on said premises and Anna Claire Brookshire's automobile for the following property Cannabis Sativa L., Cannabis Americana, Cannabis Indica, Marijuana, or any other compound or mixture thereof, or any other illegal substance as described under the provisions of the Alabama Uniform Controlled Substances Act." [Emphasis added].
The search warrant comports with the Fourth Amendment requirement that a warrant particularly describe the place to be searched and the persons or things to be seized.
In the case at bar we do not have a complete departure from the affidavit as appeared in the affidavit and search warrant in Peavy v. State, supra. The pertinent part of the affidavit recited in the foregoing paragraphs shows that the search warrant followed the language in the affidavit. The departure noted in Peavy v. State does not appear in the case at bar.
The search warrant in question authorized a search of specific persons, a specific place, a specific automobile, and designated the specific items to be seized. The search warrant directed the officers to seize "Cannabis Sativa L., Cannabis Americana, Cannabis Indica, Marijuana, or any other compound or mixture thereof, or any other illegal substance as described under the provisions of the Alabama Uniform Controlled Substances Act."
The foregoing directive which appeared in the search warrant is more limited than the one condemned in Peavy v. State, supra. Unlike the directive in Peavy, it specifies only those controlled substances, possession of which is prohibited by the Alabama Uniform Controlled Substances Act. It does not have the impermissibly broad language appearing in Peavy, supra, where the police officers were directed to seize "any controlled *Page 353 
substance prohibited by the laws of the State of Alabama." We conclude therefore that the seizure of the barbiturates did not come about as a result of a general exploratory search.
 C
The appellant declares that the seizure of three pieces of mail addressed to Milton H. Satterwhite, was the product of a search which extended beyond the items listed to be seized. He claims it was an indiscriminate seizure which violated the very command of the issuing magistrate who directed a search for a specific item (marijuana).
The mail taken, a letter and two newspapers, constituted mere evidence. Generally, property may be seized if there is a nexus between it and the criminal behavior. Also, if an item seized falls within the fruits — instrumentality — contraband category, the nexus automatically exists. However, where the object seized is mere evidence, the test is whether the officer had probable cause to believe that the evidence sought will aid in the particular apprehension or conviction. Warden MarylandPenitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642,18 L.Ed.2d 782.
Whether the requisite nexus exists can be determined by the formulation used by the Supreme Court of Alaska. There the court said:
 "[A]n officer may seize evidence of a crime even though such property is not particularly described in the search warrant when the objects discovered and seized are reasonably related to the offense in question, when the searching officer at the time of the seizure has a reasonable basis for drawing a connection between the observed objects and the crime which furnished the basis for the search warrant, and the discovery of such property is made in the course of a good faith search conducted within the authorized perimeters of the search warrant." Bell v. State, Alaska, 482 P.2d 854.
In the case at bar, the appellant's mail was seized in order to establish his connection with the trailer park premises. The address on Satterwhite's mail was the only direct evidence which linked him to Miss Brookshire's trailer. This evidence tended to show Satterwhite's occupancy of the trailer and had a direct bearing on the question of his possession of the pills found there. Therefore, we conclude that the items of mail which were not particularly described in the search warrant, although "mere evidence," were subject to seizure under a valid search warrant as long as there was a nexus between the items seized and criminal behavior charged. The searching officers in this case, at the time of seizure, had a reasonable basis for believing such a connection existed. See People v. Piwtorak, Colo., 484 P.2d 1227; State v. Hamilton, Iowa, 236 N.W.2d 325.
 D
It is also alleged that the return in this case was fatal because it did not list certain items seized by the State in the search of the residence.
The defect deemed fatal by the appellant is not "constitutionally significant" under Cady v. Dombrowsky,413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706, and is not a defect that will require suppression of the evidence. As was pointed out by the Supreme court of Wisconsin in State v. Meier,60 Wis.2d 452, 210 N.W.2d 685, the requirements concerning the return of a search warrant serve as a valuable safeguard of the property rights of individuals. However, the privacy of the individual, which is what the Fourth Amendment protects, has already been invaded by the time the return statute becomes relevant. Therefore, we conclude that the failure to make a return of the search warrant did not affect the validity of the warrant or of the search because the making of the return was not part of the search and seizure, but part of the ministerial procedures of a search warrant. See Nofs v. State, Fla.App.,295 So.2d 308; State v. Calvert, Tenn., 410 S.W.2d 907; Pecinav. State, Tex.Cr.App., 516 S.W.2d 401. *Page 354 
 E
The appellant maintains that the trial court's refusal to allow inquiry into the supporting affidavit to the search warrant, on the ground that the affidavit on its face showed sufficient probable cause for issuance, was error. Counsel insists that disallowing cross-examination of the affiant-police officer concerning the identity of the informer and the facts demonstrating his credibility, was not only a denial of due process but was a denial of an opportunity to elicit evidence which may have resulted in evidence suppression.
The narrow issue presented is whether or not the accused will be permitted to challenge the truth of the averments in a search warrant's supporting affidavit.
We have been unable to find any case cited by our appellate courts which have considered this precise question which seems to be one of first impression in this State.
A wide disparity exists among state and federal cases on the treatment of this issue and the results and reasons relied on are divergent to the majority rule as outlined in State v.Harris, 25 N.C. App. 404, 213 S.E.2d 414. There the court said that the majority rule was:
 ". . . where the search warrant is valid on its face, and the sworn allegations are sufficient to establish probable cause, the defendant may not dispute and attack the allegations, or the credibility of the affiant or his informant, in the voir dire hearing on the defendant's motion to suppress the evidence seized by law officers pursuant to the search warrant."
The Court of Appeals of North Carolina held that the policy of the Fourth Amendment to protect unreasonable search and seizure is adequately served by the standards set forth inAguilar v. Texas, supra and Spinelli v. United States, supra. The court explained that, once a neutral and detached magistrate makes a determination of probable cause, he has judged for himself the persuasiveness "of the facts relied on by the complaining officer," and such determination should be respected by the reviewing court. Spinelli, supra; Giordenellov. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. Further, the court went on to say:
 "To permit a defendant to challenge the truth or accuracy of the factual averments of the affidavit or the credibility of the informant or the affiant, would open at trial an issue or issues, therefore judicially determined collateral to that of guilt or innocence."
The rule adopted by a number of federal circuit courts was enunciated in United States v. Carmichael, 7 Cir.,489 F.2d 983, and is as follows:
 ". . . a defendant is entitled to a hearing which delves below the surface of a facially sufficient affidavit if he has made an initial showing of either of the following: (1) any misrepresentation by the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material."
As we have stated, there are many divergent views by states encompassing situations where there are controlling statutes and others where investigation into the supporting facts of an affidavit are allowed under certain conditions. For a more detailed discussion, see State v. Boyd, Iowa, 224 N.W.2d 609.
In our judgment the better rule and the one that should be followed by our State is the one announced in United States v.Carmichael, supra. See North Carolina v. Wrenn, 417 U.S. 973,94 S.Ct. 3180, 41 L.Ed.2d 1144; McConnell v. State, 48 Ala. App. 523, 266 So.2d 328.
In adopting this rule, we do not mean to be understood to imply that perjury is commonly practiced by this State's law enforcement officers, but, rather, we recognized that an accused, who makes an initial showing that the truth of the allegations of the supporting affidavit are to be doubted, raises the proposition that the safeguards prescribed by the Fourth Amendment may have failed. *Page 355 
Although we may assume that supporting facts in an affidavit showing probable cause are truthful, United States v. Halsey, D.C., 257 F. Supp. 1002, the function of a neutral and detached magistrate is thwarted when the supporting facts of an affidavit are false. In order to insure the mandates of the Fourth Amendment, an inquiry should be permitted at a suppression hearing where the defendant has made an initial showing of a misrepresentation of a material fact, intentional or unintentional.
In our jurisdiction the State may buttress a deficient affidavit with supplemental testimony by showing it was given to the issuing magistrate. Funches v. State, 53 Ala. App. 330,299 So.2d 771; Oliver v. State, 46 Ala. App. 118, 238 So.2d 916. That the prosecution is not precluded from offering supplemental evidence seems to be the basis for the majority rule that the supporting affidavit of a search warrant is to be tested only by the evidence originally offered to the magistrate.
In the present case the trial court did not err when it refused to permit the defense counsel to go behind what was contained on the face of the search warrant. It is clear from the record that appellant's cross-examination of the affiant-police officer was used in hopes of finding some means of impeaching the affidavit.
 II
The appellant avers that the trial court committed reversible error when it permitted admission of hearsay testimony in the form of State's exhibits numbered one and two. State's exhibit one was the affidavit for the search warrant and State's exhibit two was the search warrant and return issued by the magistrate.
Our search of the record on this point indicated that when the search warrant and affidavit were admitted at trial the following occurred.
 "MR. MYERS: Your Honor, at this time, we would offer State's Exhibit One and Two into evidence.
"THE COURT: Very well.
 "MR. NIX: Your Honor, I would like to object for the record.
 "THE COURT: Very well. Your objection is most respectfully overruled.
"MR. NIX: Except, Your Honor."
A general objection to the admissibility of evidence will not suffice to place the trial court in error when it overrules an objection. Small v. State, 348 So.2d 507 (Ala., 1977);Granberry v. Gilbert, 276 Ala. 486, 163 So.2d 641.
In the absence of a specific objection to the admission of this evidence the point of error was not preserved for review.
 III
The appellant contends that the trial judge improperly injected himself into the prosecution of a lawsuit by "making prejudicial comments" and conducting biased interrogations throughout the trial. Counsel argues that this was clearly prejudicial.
The defendant maintains that the trial court assumed the role of a prosecutor in the following three instances that occurred in the presence of the jury.
(1) DISTRICT ATTORNEY MR. MEYERS
 "Q. All right. What, if anything, did you find on the inside of the trailer and where did you find it?
"A. Could I have the return slip.
 "Q. We found two pipes containing residue, which was found in the kitchen area; a small cabinet that you open up. And the two pipes were found there in the kitchen area.
"THE COURT: You say they contained residue?
"THE WITNESS: Yes sir.
"THE COURT: What kind of residue?
"THE WITNESS: Marijuana residue.
 "MR. NIX: Your Honor, I object. The defendant is not being charged with the possession of any pipes.
"THE COURT: Well, overruled.
 "MR. MEYERS: Your Honor, this is just part of the res gestae. *Page 356 
"MR. NIX: Respectfully except."
(2) DISTRICT ATTORNEY MR. MEYERS
 "Q. Okay. After placing the defendant Satterwhite under arrest, did you have an occasion to search the automobile that he arrived in?
"A. Yes, sir, we did.
"Q. What, if anything, did that search reveal?
"MR. NIX: Objection. Irrelevant.
 "THE COURT: Is that the automobile that he drove up in?
"THE WITNESS: Yes, sir, it is.
 "MR. MEYERS: Did your search warrant include all automobiles within the curtilage?
 "THE WITNESS: It included Anna Claire Brookshire's automobile, which at the time I asked Miss Brookshire was that her automobile and she said that it was.
 "THE COURT: And that's the automobile that drove up at that time with the defendant in it?
"THE WITNESS: Yes, sir, it is.
 "THE COURT: And you searched it with the defendant there present?
"THE WITNESS: Yes, sir, we did.
"THE COURT: Overruled.
"MR. NIX: Respectfully except."
(3)
"MR. NIX: I have no more questions.
 "THE COURT: The address on all of those, — excuse me just a minute —
"THE WITNESS: Yes, sir?
 "THE COURT: The address on all of those, the letter and those two papers is the same address as where you made the search; is that correct?
"THE WITNESS: Yes, sir, it is.
"THE COURT: And addressed to him at that address?
"THE WITNESS: Yes, they are.
 "THE COURT: And you say that you found those within the trailer, inside the trailer?
 "THE WITNESS: Yes, sir, in the bedroom in the trailer.
"THE COURT: That's all.
"MR. MEYERS: That's all."
This court in Brandes v. State, 17 Ala. App. 390, 85 So. 824, stated:
 "The unquestioned province of the court — in fact, the solemn and sacred duty of a trial judge — is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such question as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other. Beal v. State, 138 Ala. 94, 35 So. 58. In fact, it is a sacred duty of a judge, both in civil and criminal cases, to give strict attention to the evidence, and to all facts and incidents attendant upon the trial, to propound questions to witnesses if in his judgment he deems it necessary, and to supervise and control the proceedings before him with a view that justice may not miscarry."
We have carefully examined the entire record and have particularly noted those instances cited to us by the appellant. From this review we have found nothing to indicate that the trial judge transcended his authority or abused his discretion.
 IV
The appellant next complains that the trial court erred in permitting testimony connecting him with a crime and misconduct different from that with which he was charged. The evidence complained of came during testimony of the police officers who stated they seized marijuana and paraphernalia containing marijuana residue. Under Morrow v. State, 52 Ala. App. 145,290 So.2d 209, these items of evidence were properly admitted under the res gestae exception to the rule that evidence of another criminal act is inadmissible. See Lackey v. State, 41 Ala. App. 46, 123 So.2d 186. Further, the marijuana seeds, marijuana and hashish, found on top of the barbiturates in the plastic bag, were admissible as part of the same transaction. Morrow v.State, supra. *Page 357 
Also, the testimony concerning the seizure of the paraphernalia, the other marijuana seeds and the roaches (marijuana cigarettes) was also admissible under Brantley v.State, 294 Ala. 344, 317 So.2d 345; Lackey v. State, supra.
It is further argued that it was error for the trial court to allow a police officer to testify that he had on a prior occasion bought marijuana from the appellant. This testimony came after the defense counsel had made inquiry on cross-examination of the police officer's knowledge of the defendant.
In our judgment no error was committed by the trial court in permitting the State on re-direct to go into the matter of the police officers' knowledge of the defendant. It was the defense counsel who initiated inquiry into the matter. We also note that the court on two separate occasions gave the jury cautioning instructions concerning testimony regarding prior offenses and also made cautionary remarks concerning other offenses during the court's oral charge.
Under these circumstances it is our judgment that the testimony of the police officers, which was admitted without objection, was not error.
 V
Appellant submits that the evidence was insufficient to show constructive possession or knowledge of the presence of the barbiturates.
The offense of possession of barbiturates may be jointly committed. Green v. State, 30 Ala. App. 94, 2 So.2d 324. Also the accused's guilt does not depend upon proof that he has ownership of the barbiturates. Womack v. State, 34 Ala. App. 487, 41 So.2d 429. Further if evidence is presented from which the jury is convinced beyond a reasonable doubt and to a moral certainty that the accused was in constructive possession of the barbiturates and knew of their presence then this would be sufficient to sustain a conviction. Womack v. State, supra. Such guilty knowledge and constructive possession may be established by circumstantial evidence. Thomas v. State,37 Ala. App. 179, 66 So.2d 189; Daniels v. State, 49 Ala. App. 654,275 So.2d 169. See also Parks v. State, 46 Ala. App. 722,248 So.2d 761.
The proof presented by the State was recounted when the trial judge denied the appellant's motion to exclude the State's evidence:
From the record:
 ". . . . In this particular case here, the evidence shows that through your cross-examination of the officers, there was evidence to the fact that they had received information from informants that the defendant lived there; that on this particular occasion, that they came there and they found the mail there on the inside of the trailer which was addressed to him at that address. They found marijuana seeds within the bedroom there where they found both his letters and men's clothing, as well as women's clothing, and these seeds, the marijuana seeds, were also found in the step right outside of the doorway there with the barbiturates that they found.
 "The defendant, himself, appeared there while the search was in progress. He gave — when asked if he was Milton Satterwhite, he denied it and I would like to point out the recent case of Cobb v. State, [50] Ala. App. [707], 282 So.2d 327, which is a case where the accused gave a false name and in that particular case there, they held that the giving of a false name is evidence for the jury to consider as touching on the — well, I'll read it. It said, `The accused giving a false name to the police at the time of arrest is circumstances which may be properly weighed by the jury, along with the other evidence as indicating consciousness of a guilt or to show wish or desire to escape detention.' In this particular case without contradiction here, he said that he wasn't Milton Satterwhite, when in effect the evidence shows that he was.
 "And in addition to that, there was evidence that he was driving an automobile, *Page 358 
came there in an automobile owned or, according to the evidence, owned by Miss Brookshire, who was also alleged to be an owner or occupier of the residence.
 "And the Court's of the opinion that there is more than sufficient evidence to go to the jury on the question of whether or not he was in possession of the premises there. I feel that that is a jury question.
 "I further feel that whether or not he was in control of these particular drugs found there in the location that the evidence showed, that is out there underneath the steps there in the concrete block, would also be a jury question as to whether or not he knew and was conscious of the fact that those drugs were there and therefore, whether he was in possession of them, constructive possession, and for that reason the Court is going to overrule your motion to exclude the State's evidence."
Under the authority cited above and after a review of the evidence pointed out by the court in its foregoing order, we are of the opinion that the evidence was sufficient to establish constructive possession. Further the trial court was correct in submitting the question to the jury.
 VI
Finally, the appellant states that the sentence was improperly imposed by the trial judge because in sentencing the appellant, the court considered three prior convictions which were on appeal at the time. Counsel argued that the court's reliance on these convictions in assessing a sentence mandates that the case be remanded to the circuit court of Lee County under the authority of United States v. Tucker, 404 U.S. 443,92 S.Ct. 589, 30 L.Ed.2d 592.
In Tucker, supra, the Supreme Court of the United States remanded a case for reconsideration of the sentence where the trial judge in a federal district court gave explicit consideration to three previous felony convictions before imposing sentence on the defendant. Two of the three prior convictions were constitutionally invalid because the accused did not have counsel at time of the trial. The court said that if the trial judge had knowledge of the constitutional infirmity the sentence might have been different and the case should be remanded.
In our judgment, United States v. Tucker, supra, is not applicable because the three previous convictions in this case were not unconstitutionally obtained. The opinion of this court in the three previous Satterwhite convictions, of which we take judicial notice, shows clearly that at the time of the three prior convictions in Randolph County, the appellant, Milton A. Satterwhite, was represented by counsel. Further, we also note that the reversals of those three cases are on appeal in the Alabama Supreme Court and that such reversals were based on the ground of a conflict of interest by one of the attorneys prosecuting the case. The opinion showed that the appellant, Milton A. Satterwhite, prior to the three convictions, had consulted an attorney who was later a member of the prosecuting team who tried those cases.
On the basis of the foregoing, we are of the opinion thatUnited States v. Tucker, supra, is not controlling and a remand is not appropriate under the facts. In the words of Mr. Justice Blackmun, in a dissenting opinion in United States v. Tucker, supra, wrote:
 ". . . that this is an exercise in futility, that the Court is merely marching up the hill only to march right down again, and that it is time we become just a little realistic in the face of a record such as this one."
We have read and examined the record and find no error.
AFFIRMED.
All the Judges concur. *Page 359