The district attorney for the Thirteenth Judicial Circuit petitioned for a writ of mandamus directing Judge Herman Y. Thomas to vacate his order dismissing theft charges against Thomas R. Maddox. Maddox, a construction contractor, was indicted for theft of property in the first degree for allegedly exercising unauthorized control over $60,000 — money paid to him by Leslie Barbour for materials to renovate her residence. On November 26, 2000, a jury was empaneled and sworn and the State proceeded to present its case against Maddox. During the State's case-in-chief, Maddox moved to dismiss the charges against him. He argued that the subject of the charge was a civil dispute (i.e., one based in contract) that did not subject him to criminal liability. After a hearing, Judge Thomas granted the motion. The district attorney informed Judge Thomas that he would file a petition for a writ of mandamus attacking the ruling. This petition followed.
Initially, we must determine if this action is properly before this Court. The ruling that is the subject of this mandamus petition was made during a trial on criminal charges against Maddox. A jury had been empaneled and sworn and the State had called witnesses to the stand. Jeopardy had attached. Ex parte McKenna, 655 So.2d 989 (Ala. 1995).
The State has a limited right to appeal; that right is governed by § 12-12-70, Ala. Code 1975, § 12-22-91, Ala. Code 1975; and Rule 15.7, Ala.R.Crim.P. According to these provisions, the State may appeal from a judgment holding a statute unconstitutional and from pretrial
rulings suppressing evidence, dismissing charges, or quashing an arrest or a search warrant. The State has no right to appeal from an order dismissing a case once jeopardy has attached. Because the State had no right to appeal from Judge Thomas's ruling, its only means of obtaining review by a higher court was to file a petition for a writ of mandamus. As the Alabama Supreme Court stated in Ex parte Sullivan, 779 So.2d 1157,1161 (Ala. 2000):
 "The power of an appellate court of this state to issue a writ of mandamus at the request of the State in a criminal case when the Legislature has not provided the remedy of appeal is not unqualified. We have said:
 "`Casual resort to mandamus cannot be permitted to undermine an accused's right against double jeopardy, and only the rarest of circumstances merit an intervention in a criminal case by mandamus; nevertheless, circumstances can arise which present a compelling need for the issuance of mandamus to further important countervailing public interests.'
 "Ex parte Nice, 407 So.2d [874] at 880 [(Ala 1981)] (citations omitted) (emphasis omitted). Clearly, a writ of mandamus is a supervisory order; thus, an appellate court may issue this writ in any situation, within recognized limits, where this writ is necessary to protect the proper judicial administration of the courts. The Court of Criminal Appeals had the authority to review the order of *Page 948 
dismissal by considering the State's petition for the writ of mandamus."[1]
We allowed Maddox 21 days to respond to the mandamus petition. Maddox filed a motion to dismiss. He argued that the mandamus petition was filed more than 7 days from the date the motion to dismiss was granted; thus, he argued, it is untimely. Maddox cites Rule 21(a), Ala.R.App.P., in support of this contention. Rule 21(a), Ala.R.App.P., states, in pertinent part:
 "The petition shall be filed within a reasonable time. The presumptively reasonable time for filing a petition seeking review of an order of a trial court shall be the same as the time for taking an appeal. If a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time."
The above provision was added to Rule 21(a) effective September 1, 2000. Prior to this change, Rule 21 contained no provision specifying a time within which a mandamus petition had to be filed. Appellate courts had previously applied a standard of reasonableness on a case-by-case basis. In State v. McKinney, 727 So.2d 893 (Ala.Crim.App. 1998), we held that a mandamus petition filed two months after the challenged ruling was filed within a reasonable time. See also Ex parte Dennis, 681 So.2d 157
(Ala.Civ.App. 1995) (mandamus petition filed five months after ruling that was subject of petition was filed within a reasonable time).
The district attorney responded to Maddox's motion to dismiss by stating that the ruling on the motion was not entered before trial; therefore, the mandamus petition is not subject to the seven-day filing period set out in Rule 15.7, Ala.R.Crim.P. (This provision says that the state has seven days to appeal from an adverse pretrial ruling.) He asserts that the "presumptively reasonable time" referred to in Rule 21(a) is the 42-day period that governs the filing of a notice of appeal. See Rule 4(b), Ala.R.App.P. We believe that the Supreme Court intended that a petitioner in a case like this one have 42 days in which to file a mandamus petition. If the Supreme Court had intended to set a separate time period for the State it could have amended Rule 21(a) to so provide. The petition here was filed 35 days after Judge Thomas granted the motion to dismiss. The petition was filed within a "presumptively reasonable time."
A problem we are confronted with in this case is that Maddox did not respond to the allegations in the petition. Thus, Maddox has failed to refute any of the factual assertions made by the district attorney for Mobile County. When a respondent fails to refute the allegations in a mandamus petition the reviewing court must consider the petitioner's assertions to be true. As we stated in Ex parte Swoope, 724 So.2d 92,93-94 (Ala.Crim.App. 1998):
 "Failure to respond to the allegations in a petition for a writ of mandamus compels this Court to consider those allegations to be true. The Alabama Supreme Court, noting the importance of an answer, stated, `An answer in a *Page 949 
mandamus proceeding is very important, as is evidenced by this Court's holding that uncontroverted averments of fact stated in an answer should be taken as true.' Ex parte Sharpe, 513 So.2d 609, 610 (Ala. 1987). See also Ex parte Helbling, 278 Ala. 234, 177 So.2d 454
(1965). A further reason for requiring an answer is that mandamus relief may not be granted unless the respondent is granted an opportunity to answer the allegations in the petition. Sharpe, 513 So.2d 609; see also Rule 21(a), Ala.R.App.P."
Thus, we will proceed to evaluate the merits of the district attorney's petition, using the facts presented in its brief in support of the petition.
The State's evidence at trial showed that Maddox and Barbour had entered into a contract pursuant to which Maddox was to renovate Barbour's residence. The contract provided that Maddox would draw money every 30 days to pay for designated materials. The evidence showed that Maddox made six draws and that six checks were presented to him. Maddox did not dispute that he cashed these checks and that he directed the money to be paid to various vendors involved in the renovations. Draw number one was for $19,259.84, to be paid, in part, to Ladd Supply Company for building materials. Draw number two was for $27,299.91, to be paid, in part, to Ladd Supply. Draw number 3 was for $27,634.02, to be paid, in part, to Ladd Supply, and in part ($8,925.00) to J.W. Cabinets. Draw number 4 was for $34,409.48; of that amount $12,587.94 was to be paid to Ladd Supply. Draw number 5 was for $42,522.02; of that amount $9,215.06 was to be paid to Ladd Supply and $2,000 was to be paid to Blackstone Plumbing. Draw number 6 was for $48,071.31; of that amount $7,480.53 was to be paid to Ladd Supply, $5,290.00 was to be paid to Jenkins Brick, $2,200.00 was to be paid to Hunter Security for a security system, and $3,627.20 was to be paid to Archways, Inc. for a deposit on a spiral staircase. Maddox did not pay J.W. Cabinets the $8,925.00; he did not pay Blackstone Plumbing the $2,000.00; he did not pay Jenkins Brick the $5,290.00; he did not pay Archways, Inc., the $3,627.00; he did not pay Hunter Security the $2,200.00. Of the $30,000 that Maddox requested for the purpose of paying Ladd Supply, all but $2,386.77 was applied to past-due accounts, with Maddox's knowledge, not to the materials to be used to renovate Barbour's residence. The district attorney also presented evidence that Barbour was forced to pay for all of the materials after Maddox had failed to pay the vendors the amounts he had previously billed her.
The petitioner argues that Maddox's actions amount to a criminal offense because, he says, there was proof that he exercised unauthorized control of the moneys given to him by Barbour by directing those moneys to purposes other than what they had been designated for when he billed Barbour. We believe that the wording of the theft statutes and prior decisions of the appellate courts of Alabama support the petitioner's claim.
Theft of property in the first degree is defined in § 13A-8-2, Ala. Code 1975. This section states:
"A person commits the crime of theft of property if he:
 "(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
 "(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property."
(Emphasis added.) Here, Maddox was indicted pursuant to § 13A-8-2(1); thus, it was incumbent on the State to prove that *Page 950 
he "obtained or exerted unauthorized control" over the moneys Barbour gave him.[2] This phrase is defined in § 13A-8-1(7). That section states:
 "Obtains or exerts control or obtains or exerts unauthorized control over property includes but is not necessarily limited to the taking, carrying away or the sale, conveyance or transfer of title to, or interest in, or possession of, property, and includes but is not necessarily limited to conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, larceny by conversion, embezzlement, extortion or obtaining property by false pretenses."
The Alabama Supreme Court in Ex parte Bain, 484 So.2d 383, 383-84
(Ala. 1986), applying this definition to a factual situation, stated:
 "Here, the indictment alleged theft by knowingly obtaining and exerting unauthorized control over the property of another, and the proof supports such an indictment. The State did not attempt to prove theft by deception. It did not try to prove that the oil loading operation in Nigeria promoted by Bain, and invested in by some ten separate investors, was in fact nonexistent. Rather, it appears from the State's evidence that the theory of the State's case was that Bain was engaged in legitimate, although risky, oil transportation ventures. The testimony of the victims was that they gave Bain money as investments in such a venture, but with authorization to use the money for specified purposes, namely, to pay for the actual and direct expenses incurred in the loading, transporting, and unloading of crude oil from Nigeria. Had the monies been expended as authorized, and had the venture failed to produce profits, no criminal conduct would have been involved. However, the State proved that Bain diverted the monies to pay local overhead and expenses, which he was not authorized to do. At this point, he exercised unauthorized control over the property of others, and his control became criminal under § 13A-8-2(1), as charged in the indictment. The State cites Deep v. State, 414 So.2d 141 (Ala.Crim.App. 1982), wherein the proof was that Deep initially may have had authorized control over the 10-foot by 20-foot portable building owned by the State and used as a `cook shack' during the disaster relief effort following Hurricane Frederic, since he was an employee of the Disaster Housing Office in Mobile. However, when Deep transferred this building to his home in Montgomery, incorporated it into the landscape of his backyard, and used it to store his personal property, there was sufficient evidence presented to support the State's theory that Deep intended to exercise unauthorized control over this item of State property and to deprive the State thereof.
 "Judge Tyson, writing for the Court of Criminal Appeals in Deep, wrote:
 "`We have no way of knowing how the jury weighed the facts presented, but they need not have totally disregarded *Page 951 
Mr. Killough's testimony that some control was "authorized" in order to conclude that appellant "intended to deprive" the State of its property and eventually "exerted unauthorized control over" same. Unauthorized control could certainly have been exerted even if the initial possession had been acquired with the consent of the owner.' (Emphasis in original.)"
The facts of this case are substantially similar to the facts presented in Bain. Maddox exerted unauthorized control over the moneys Barbour gave to him. However, whether Maddox had the intent to deprive Barbour of those moneys is a question for a jury to resolve.
We disagree with Judge Thomas's holding that this case presents an issue of civil liability — not criminal conduct. We quote with approval the words of this court in Harrison v. State, 465 So.2d 475, 476
(Ala.Crim.App. 1984):
 "It is true that our courts have `taken a dim view' of the threat of prosecution to collect civil debts and that our constitution provides `that no person shall be imprisoned for a debt.' Art. I, Sec. 20, Constitution of Alabama. Nonetheless, almost every criminal act also generates civil liability. To refuse to enforce criminal laws with vigor because of civil consequences to the parties is unthinkable."
Moreover, this Court, in Wright v. State, 421 So.2d 1324, 1333
(Ala.Crim.App. 1982), stated:
 "That body of law which condemns the use of criminal sanctions to enforce the collection of civil debts does not apply here. While appellant may, in fact, still be obligated from a contractual standpoint to repay the $43,000, as well as other monies, to Associates Financial Services, this prosecution did not arise out of the fact appellant owed money; rather, it arose because appellant had received embezzled property in violation of Ala. Code § 13-3-38 (1975). The crime in this case is predicated upon appellant's `tortious act' of receiving embezzled property, not upon his failure to perform under a contract. See Davis v. State, 237 Ala. 143, 185 So. 774
(1938)."
(Footnote omitted.)
Here, Maddox's conduct was the result of his exerting unauthorized control over Barbour's money. As stated in Wright, this conduct was not predicated on Maddox's failure to perform under his contract with Barbour.
In order for a writ of mandamus to issue, the petitioner must establish: (1) a clear legal right in the petitioner to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court. State v.Williams, 679 So.2d 275 (Ala.Crim.App. 1996). The district attorney has satisfied all of the prerequisites for the issuance of this writ.
For the foregoing reasons, this petition is due to be, and is hereby, granted. Judge Thomas is directed to set aside his order of dismissal and to reinstate the indictment against Maddox.
PETITION GRANTED.
Cobb, Baschab, Shaw, and Wise, JJ., concur.
[1] Maddox argues in his motion to dismiss the State's mandamus petition that there is no authority for an appellate court to set aside an order of dismissal by a circuit court. This argument is directly refuted by the Supreme Court's holding in Sullivan and by prior caselaw of this court. See State v. McKinney, 727 So.2d 893 (Ala.Crim.App. 1998) (granting State's mandamus petition after the judge, in the middle of a trial, dismissed the indictment against the accused).
[2] The indictment against Maddox read as follows:
 "The grand jury of said county charge, that, before the finding of this indictment Thomas R. Maddox, a/k/a Ron Maddox, whose name is to the grand jury otherwise unknown than as stated, did knowingly obtain or exert unauthorized control over checks or lawful currency of the United States of America, the property of Leslie Barbour, of the approximate aggregate value of Sixty Thousand and 00/100 dollars ($60,000.00), with the intent to deprive the owner of said property, in violation of § 13A-8-3 of the Code of Alabama." *Page 952